In re BENSON.

(Circuit Court, N. D. California. November 23, 1893.)

1. INDICTMENT—SUFFICIENCY—WORDS OF STATUTE—CONSPIRACY.
It is not sufficient to charge a conspiracy to defraud the United States in the general language of Rev. St. § 5440. U. S. v. Hess, 8 Sup. Ct. 571, 124 U. S. 483, applied.

2. SAME—SUFFICIENCY OF FACTS ALLEGED.
An indictment for conspiracy to defraud the United States is insufficient, which charges, in substance, that defendants, knowing the terms of a contract whereby a certain deputy surveyor agreed to survey certain public lands for an agreed compensation, made fictitious surveys and false field notes, and deceived the surveyor general into approving the same and certifying accounts for money payable to the said deputy surveyor, but which does not charge that defendants acquired, or pretended to have acquired, any interest in said contract, or that they personated said deputy surveyor, or that he was a party to the conspiracy, for this fails to show that the scheme could have resulted in defrauding the United States.

At Law. Petition by John A. Benson to be discharged on writ of habeas corpus from the custody of the United States marshal for the district of California, in which he is now held awaiting trial in the United States circuit court for said district upon an indictment. Petitioner discharged.

J. C. Campbell, for petitioner.

Chas. A. Garter, U. S. Atty., and F. S. Stratton, Special Asst. U. S. Atty., for the United States.

HANFORD, District Judge. To give a clear understanding of this case and of my reasons for granting the petition, it is necessary to make a brief statement of the proceedings connected with the indictment set forth in the petition, as the same appear of record. The acts for which the government prosecutes the petitioner, M. F. Reilly, George H. Perrin, and others were committed in the state of California prior to the act of congress dividing the district of California, and creating the southern district of said state, and establishing United States circuit and district courts for said new district, and continuing the previously existing circuit and district courts as circuit and district courts for the northern district of California. The act contains the following saving clause:

"Sec. 11. That all offenses heretofore committed in the district of California shall be prosecuted tried and determined in the same manner and with the same effect to all intents and purposes, as if this act had not been passed." 24 Stat. 310.

To give effect to this provision, the courts have held that for the prosecution, trial, and decision of all cases for offenses committed within the state prior to the date of the act, and for the purpose of issuing and enforcing judicial writs and process in such cases, the courts for the district of California continue to exist. U. S. v. Benson, 31 Fed. 896, 12 Sawy. 477. In November, 1887, a grand jury presented to the circuit court for said district a number of indictments, including the indictment against Benson and Reilly set forth in the petition, and a similar indictment against Perrin, McNee, and Benson, to which further reference will be made. Indictments in kindred cases were also returned to the district court in December, 1886, and to the circuit court in February, 1888. The defendants, upon being arraigned, by pleas in abatement and demurrers denied the jurisdiction of the courts, and questioned the validity of each of the several indictments on various grounds, but in most of the cases their pleas and demurrers have been overruled. The prosecution of these cases has necessarily caused great expense to the government. The successive incumbents of the office of United States attorney for the district and special counsel on behalf of the government have been vigorous and untiring in their efforts to succeed, and those now in charge of the cases are still uncompromising and zealous. Among other causes for delay in the final determination of the cases have been changes in the judiciary by the death of the circuit judge for the ninth circuit and of the district judge for the northern district of California. The present circuit judge residing

in the district and district judge for the northern district of California are both disqualified in these cases by reason of having been, in the performance of official and professional duties previous to their respective appointments to the bench, required to act in matters connected with the prosecution of these cases. To facilitate the proceedings, the district judge for the district of Washington has been, pursuant to section 592, Rev. St., designated and appointed to have and exercise the powers of district judge for the district of California, and to hold a circuit court for said district, commencing on a day set for the trial of the case upon the indictment set forth in the petition and another similar case. Thereupon the defendants in the two cases for which trials had been so arranged, by their attorneys, applied to said district judge for leave to withdraw their pleas of not guilty, and to again present the questions as to the validity of the indictments by demurring thereto. After hearing full arguments, I found the objections to the indictments to be serious. I entertained grave doubts whether the defects in the indictments would be cured by verdicts against the defendants, and deemed it to be inexpedient for the government to go to trial in said cases unless such verdicts, if secured, could be lawfully sustained. Therefore, said applications were granted, and afterwards the demurrers were argued before Hon. William B. Gilbert, circuit judge, and myself, and taken under advisement. Upon consulting together, the judges found it impossible to render a decision sustaining said indictments without disregarding the rules of pleading in criminal cases under the laws of the United States, as given and repeatedly affirmed by the decisions of the supreme court, and we were reluctant to sustain the demurrers, because these indictments, with others, had been previously demurred to, and the court had sustained them, and, no opinion having been filed, we were in the dark as to the reasons for the court's ruling. We therefore announced that the order fixing a date for the trials would be vacated, and that we would hold the demurrers under advisement until the justice of the supreme court allotted to the ninth circuit, the only surviving judge of the circuit court who had previously considered the demurrers, could be induced to hear a reargument, or at least be consulted. The trials being thus postponed indefinitely, the defendant Benson was by his sureties surrendered into the custody of the marshal, and he then filed his petition for a writ of habeas corpus in the circuit court for the northern district of California.

Having regard to the right of the defeated party, whether it be the government or the prisoner, to appeal from the judgment of the circuit court to the circuit court of appeals, and as Judge Gilbert would be disqualified from sitting as a member of the appellate court if he should decide the case in the circuit court, he deemed it expedient and necessary to make an order designating the district judge for the district of Washington to hold said circuit court during the pendency of the habeas corpus proceedings. The writ having been issued, the marshal made return thereon, showing that he holds the petitioner awaiting trial upon the indictment set forth in the peti-

tion under a mittimus issued by the circuit court for the district of California, after the surrender of the petitioner by his bail, and not otherwise. Thereupon the prisoner's attorney moved for his discharge on the ground that the return is insufficient, inasmuch as it admits that the prisoner is detained in actual custody for no cause other than to hold him for trial upon the indictment set forth in his petition; that said indictment does not charge the commission of any acts constituting a crime under the laws of the United States,— and hence the petitioner is deprived of his liberty without due process of law, in violation of the provisions of the fourteenth amendment to the constitution. This is the only ground for the motion which I have considered, although the petition states that the imprisonment is illegal for other reasons.

The indictment is set forth in haec verba in the petition. It is founded upon section 5440, Rev. St., and attempts to charge an unlawful conspiracy to defraud the United States. The first count charges:

"That John A. Benson and M. F. Reilly, late of the district of California, heretofore, to wit, on the 17th day of December, in the year of our Lord one thousand eight hundred and eighty-four, at the city and county of San Francisco, state and district of California, and within the jurisdiction of this honorable court, did unlawfully, corruptly, and wickedly conspire, combine, and agree together, and with divers other persons to the said grand jurors unknown, to defraud the United States of a large sum of money, to wit, the sum of twenty-five hundred, lawful money of the United States, by the means and in the manner following: That is to say, that they, the said John A. Benson and M. F. Reilly, well knowing that a certain contract had, before the date last hereinbefore stated, been procured, secured, and entered into by and between John W. Fitzpatrick, then and there being a United States deputy surveyor in and for the state of California, on the one part, and W. H. Brown, then and there being the United States surveyor general in and for the state of California, on the other part, whereby the said John W. Fitzpatrick, in his capacity aforesaid, in substance and effect undertook, agreed, and promised."

Following the foregoing quotation is a minute statement of the stipulations, terms, and conditions of a contract to survey certain public lands which are described, with repeated allegations that said Benson and Reilly each had full knowledge of each of said stipulations, terms, and conditions, the substance of which are as follows: Said Fitzpatrick agreed that he would in person, and in his official capacity as a United States deputy surveyor, truly and faithfully survey the lands described, and establish and mark all the lines and corners thereof, in strict conformity with the laws of the United States, the printed manual of surveying instructions, and other surveying instructions issued by the commissioner of the general land office, and with such special instructions as he should receive from the surveyor general in conformity therewith; that said Fitzpatrick would not commence said surveys until he should be officially notified of the approval of the contract by the commissioner of the general land office; and that he would complete the same, and return true field notes thereof to the surveyor general on or before the 30th day of June, 1885. Compensation for making said surveys was to be at specified rates, and no accounts

therefor to be paid unless properly certified by the surveyor general in his official capacity, nor until approved plats and certified transcripts of the field notes should be filed in the general land office, and no payments to be made for surveys not executed by said Fitzpatrick in his own proper person. After alleging that said contract was on December 17, 1884, duly approved by the commissioner of the general land office, and that Fitzpatrick was officially notified thereof, the indictment, in the first count, then proceeds as follows:

"In pursuance of the aforesaid conspiracy, combination, confederacy, and agreement among them, the said defendants, made and entered into as aforesaid, to defraud the United States as aforesaid, and the said John A. Benson well knowing that the aforesaid contract had been made and entered into by and between the said John W. Fitzpatrick, United States deputy surveyor, as aforesaid, and the said W. H. Brown, United States surveyor general, as aforesaid, at the time and in the manner aforesaid, for a survey of the lands in the aforesaid contract and hereinbefore described, and full well knowing the terms and conditions of the said contract thereafter, (meaning after the 17th day of December, 1884,) and before the date next hereinafter mentioned, for the purpose and with the intent to effect the object of the aforesaid conspiracy, did cause and procure a fraudulent, fictitious, and pretended survey of the lands described in the aforesaid contract, and hereinbefore described, to be made; and he, the said John A. Benson, defendant herein, then and there well knowing said survey of the aforesaid lands, so caused and procured by him said John A. Benson to be made as aforesaid, had not been made in strict conformity with the laws of the United States, the printed manual of surveying instructions, and other instructions issued by the commissioner of the general land office; and he, the said John A. Benson, defendant herein, well knowing that the said John W. Fitzpatrick, United States deputy surveyor aforesaid, had not executed the said survey of the lands in the aforesaid contract, and hereinbefore described, in his own proper person, or at all; and he, the said John A. Benson, defendant herein, well knowing that said survey of the lands hereinbefore described, so caused and procured by him, the said defendant, John A. Benson, to be made as aforesaid, was fraudulent, fictitious, and pretended,—for the purpose and with the intent of imposing upon and deceiving the said W. H. Brown, United States surveyor general aforesaid, in his official capacity aforesaid, and his (meaning the said W. H. Brown) successor in office in such official capacity aforesaid, should the said W. H. Brown for any cause cease to be such officer aforesaid; and for the purpose and with the intent of securing the approval of said pretended survey by the said W. H. Brown in his official capacity as United States surveyor general as aforesaid, and by his (meaning the said W. H. Brown) successor in office in such official capacity, should the said W. H. Brown for any cause cease to be such officer aforesaid; and for the further purpose of procuring the said W. H. Brown in his official capacity as United States surveyor general aforesaid, and his successor in office in such official capacity aforesaid, should the said W. H. Brown for any cause cease to be such officer aforesaid, to properly certify to the accounts and amount accruing to the defendant under and by the terms of the aforesaid contract; and for the further purpose of securing approved plats and certified transcripts of the field notes of said pretended survey to be filed in the general land office; and with the intent for the purpose of securing the payment from the United States of the contract price for said survey agreed to be paid under and by the terms of said contract made and entered into, as aforesaid, by and between the said John W. Fitzpatrick, United States deputy surveyor, and the said W. H. Brown, United States surveyor general, aforesaid; and with the intent to corruptly, wickedly, and unlawfully defraud the United States out of a large sum of money, to wit, the sum of twenty-five hundred dollars,—the said John A. Benson, defendant herein, heretofore, to wit, on the 6th day of May, in the year of our Lord one thousand eight hundred and

eighty-five, at the city and county of San Francisco, state and district of California, and within the jurisdiction of this honorable court, did cause and procure false, fictitious, and fraudulent field notes of the aforesaid false, fictitious, and pretended survey to be made of the following lands in the aforesaid contract, and hereinbefore described, to wit:

"The retracing of the west boundary of Tp. (meaning township) 12 S., (meaning south,) R. (meaning range) 40 E., (meaning east;) the subdivision lines of Tp. (meaning township) 9 S., (meaning south,) Rs. (meaning ranges) 40 and 41 E., (meaning east;) Tp. (meaning township) 10 S., (meaning south,) Rs. (meaning ranges,) 40 and 41 E., (meaning east;) Tp. (meaning township) 11 S., (meaning south,) Rs. (meaning ranges) 40 and 41 E., (meaning east;) and Tp. (meaning township) 12 S., (meaning south,) Rs. (meaning ranges) 40 and 41 E., (meaning east,)—of the Mount Diablo base and meridian in the state of California, which said lands are more definitely described as follows, to wit: * * *

"And which said lands were public lands of the United States, and were and are situate within the district and state of California, which said false, fictitious, and fraudulent field notes represented that the aforesaid survey had been made by the said John W. Fitzpatrick, United States deputy surveyor, in his own proper person, whereas, in truth and in fact, the aforesaid survey had not been made by the said John W. Fitzpatrick, United States deputy surveyor, or otherwise, in his own proper person, or at all; and which said false, fictitious, and fraudulent field notes purported to be true field notes of the actual work done in the field in making the aforesaid survey of the lines of the lands in the aforesaid contract, and hereinbefore described, whereas, in truth and in fact, said field notes were not true field notes of the work actually done in the field; and which said false, fictitious, and fraudulent field notes represented that the aforesaid pretended survey of the lands last hereinbefore described had been made in strict conformity with the laws of the United States, and the printed manual of surveying instructions, whereas, in truth and in fact, the aforesaid survey had not been made in strict conformity with the laws of the United States, and the printed manual of surveying instructions, or in conformity therewith at all; and which said false, fictitious, and fraudulent field notes represented that all the corners of the aforesaid survey of the lands last hereinbefore described had been established and perpetuated in strict accordance with the surveying manual of printed instructions, and in the specific manner therein described, whereas, in truth and in fact, all the corners of the aforesaid survey of the lands last hereinbefore described had not been established and perpetuated in strict accordance with the surveying manual of printed instructions, and in the specific manner in the aforesaid field notes described; and which said false, fictitious, and fraudulent field notes represented and purported to be true field notes of the aforesaid pretended survey of the lands last hereinbefore described, whereas, in truth and in fact, they were not true field notes of the said survey, but, on the contrary, were false, fictitious, and fraudulent field notes of said survey,—all of which said defendants John A. Benson and M. F. Reilly then and there well knew.

"And so the jurors aforesaid, upon their oath aforesaid, do say that said defendants John A. Benson and M. F. Reilly, on the 17th day of December, in the year of our Lord one thousand eight hundred and eighty-four, at the city and county of San Francisco, state and district of California, and within the jurisdiction of this honorable court, did knowingly, unlawfully, corruptly, and wickedly conspire, confederate, combine, and agree together to defraud the United States of a large sum of money, to wit, the sum of twenty-five thousand dollars, and the unlawful and fraudulent acts, in manner and form, and by the defendants in this count hereinbefore set forth, were done to effect the object thereof.

"Against the peace and dignity of the United States of America, contrary to the form of the statutes of the United States of America, in such case made and provided."

The second count is in all material particulars a repetition of the first, except that in specifying the overt acts committed to effect

the object of the conspiracy it alleges, in substance, that the defendant Benson, on the 6th day of May, 1885, falsely pretending that the surveys had been properly made by Fitzpatrick according to said contract, and with knowledge to the contrary, with intent to impose upon and deceive the surveyor general, and for the purpose of fraudulently obtaining his official approval of said pretended survey, and procuring the surveyor general, in his official capacity, to certify fraudulent accounts for said pretended survey and amounts accruing to Fitzpatrick under said contract, and for the purpose of securing approved plats and certified transcripts of the field notes of said pretended survey to be filed in the general land office, and for the purpose of defrauding the United States by securing the payment to him (Benson) from the United States of the contract price for said survey, did make, and cause to be made, false, fictitious, and fraudulent field notes of said pretended survey, which falsely represented that said survey had been made by Fitzpatrick according to the contract, which false and fictitious field notes purported to be true field notes of the work as actually done in the field; and it is further alleged in this count that the surveyor general was by the said unlawful conspiracy of Benson and Reilly, and the fraudulent acts of Benson aforesaid, "deceived into approving the said pretended survey and the said fictitious and fraudulent field notes, and into stating and certifying the amounts accrued to and earned by the said John W. Fitzpatrick under and by the terms of the aforesaid contract."

The third count is a mere repetition of the second. I am unable to discover any difference between them except in phraseology.

In this proceeding, all defects in the indictment which are merely formal, and all clerical errors and omissions and defects not prejudicial to the defendant, must be disregarded. Section 1025, Rev. St. The defendants are not entitled to go free without a trial, if by a fair construction of the pleading, as a whole, it can be understood as charging them with commission of acts which are by a law of the United States made criminal and punishable, with a sufficient statement of the particular facts to identify the offense, and enable the court to judge whether the acts alleged amount to a crime in law. I will therefore notice only the most substantial and glaring defects in this indictment. It does not in either count aver that the defendants agreed to make any use whatever of the contract referred to, or of accounts or vouchers for money earned, or pretended to have been earned, by the contractor as a means of defrauding the United States. It does not in either count connect the contractor or the surveyor general with the conspiracy, or aver that by any assignment of the contract, or any accounts or vouchers for money earned under it, or any power of attorney, or other means, the defendants, or either of them, ever acquired control of the contract or any interest therein, or possession or control of any accounts, vouchers, or claims for money earned under it, or that they were ever so related to the contract as to have been able to commit a fraud in connection therewith. It does not in either count aver that the defendants ever agreed to any scheme or

plan of operation whereby a fraud upon the United States could possibly have been consummated. I do not assume that it was essential to the validity of this indictment that it should appear therefrom that the conspirators were to be the beneficiaries of the successful execution of their own agreement. This indictment fails to specify any scheme or attempt to do anything which could have resulted in the payment by the United States of money to the defendants, or either of them, or the contractor, or any other person. The full strength of the case to be gathered from all that is alleged in all the counts, disregarding all formal and technical defects and mere legal conclusions, is no more than this: That a contract was entered into by Fitzpatrick and the surveyor general for the state of California, whereby the former agreed to survey specified townships of the public lands of the United States, and return true field notes, within a specified time, for compensation to be computed at specified rates, to be paid to him only after completion of the work and approval thereof, and the filing in the general land office of approved plats and certified transcripts of the field notes, and upon presentation of accounts for the amounts earned duly certified by the surveyor general, the work to be done by Fitzpatrick in person, and in his official capacity as a United States deputy surveyor; that Benson and Reilly knew of said contract and of all the terms and conditions thereof; that said contract was not executed; that Benson and Reilly knew that the surveys had not been made; that Benson, a stranger to the contract, for the purpose of deceiving the surveyor general and defrauding the United States, and with intent to secure payment to himself from the United States of the money payable under the contract, made a fictitious survey of said townships, and manufactured false field notes; that without co-operation of the contractor, and without personating him, Benson did, by such fictitious surveys and false field notes, so deceive and impose upon the surveyor general that, without collusion on his part with Benson, he (the surveyor general) did approve such fictitious surveys and false field notes, and did certify accounts for money payable to Fitzpatrick under the contract. Upon this state of facts the government could not have been defrauded. Benson could not obtain money on such vouchers, because there was no money payable to him, and no false certificates for money payable to him were made or intended; and it is not pretended that it was his purpose to make any use of certified accounts for money payable to Fitzpatrick, and no money could be paid to Fitzpatrick upon the accounts so certified without his becoming a party to a crime by accepting the fruit of Benson's meddlesome acts, which is not to be presumed to have been contemplated, because not alleged. The indictment does not charge a conspiracy to defraud the United States by palming off fictitious surveys of public lands and false field notes as and for lawful surveys and genuine field notes. It only attempts to charge a conspiracy to defraud the United States out of a sum of money by acts and intents wholly inadequate for the purpose. There would be less difficulty in sustaining this indictment if it simply alleged that

the defendants conspired and agreed together to defraud the United States out of a specified sum of money, and that one of them, to effect the object, did the acts charged in this indictment to have been done by Benson, with like intentions, or any similar vain and impotent acts and intents, for the reason that this indictment, instead of charging a conspiracy or agreement to defraud which might have been afterwards developed and perfected by adoption of practicable means whereby to accomplish a fraud, is so framed as to limit the evidence admissible under it to such facts as might have a tendency to prove a conspiracy to defraud the United States out of a sum of money in the particular manner, and by the particular means, therein specified, which is equivalent to saying that the defendants conspired and agreed to do, and cause to be done, only such things as could not result in any fraud whatever, with the intent, however, of thereby perpetrating a fraud upon the United States. Greater effect must be given to a particular statement of facts repugnant to a general statement of a mere conclusion than to the general statement thus contradicted. This indictment itself negatives the only accusation of crime which it contains. In their endeavor to sustain the indictment, counsel for the government ignored the words, "by the means and in the manner following, that is to say," in that part of each count charging the conspiracy; and they cited text-books and decisions in support of their contention that an indictment which charges a conspiracy in the words of the statute or other words of equivalent import, and specifies any act done by the conspirators, or either of them, to effect the object, is sufficient. The words which I have quoted, however, are in the indictment. The use thereof necessarily limits by particularizing the charge made in general terms. The court cannot ignore them. But even the position taken by counsel is untenable. The authorities produced on their side are overborne by decisions which establish for all United States courts the rule that an indictment, to be valid, must tender an issue of fact by setting forth the acts constituting the particular crime which the grand jury intend to charge. This is consonant with the general rule of pleading under equity and code systems, requiring the facts constituting a cause of action to be stated. The words of a statute defining a crime are in most cases insufficient to describe an individual case, for the reason that the statute, being prospective, must employ broad and comprehensive terms, inappropriate to distinguish a single case from all others which may be prosecuted under it. In an opinion by Mr. Justice Jackson, the principle which I invoke is ably expounded, as follows:

"The act of July 2, 1890, on which the present indictment is based, in declaring that contracts, combinations, and conspiracies in restraint of trade and commerce between the states and foreign countries were not only illegal, but should constitute criminal offenses against the United States, goes a step beyond the common law, in this: that contracts in restraint of trade, while unlawful, were not misdemeanors or indictable at common law. It adopts the common law in making combinations and conspiracies in restraint of the designated trade and commerce criminal offenses, and creates a new crime in making contracts in restraint of trade misdemeanors, and in-

dictable as such. But the act does not undertake to define what constitutes a contract, combination, or conspiracy in restraint of trade, and recourse must therefore be had to the common law for the proper definition of these general terms, and to ascertain whether the acts charged come within the statute. We regard it as well settled by the authorities that an indictment, following simply the language of the act, would be wholly insufficient, for the reason that the words of the statute do not of themselves fully, directly, and clearly set forth all the elements necessary to constitute the offense intended to be punished. U. S. v. Cruikshank, 92 U. S. 542; U. S. v. Simmonds, 96 U. S. 360; U. S. v. Carll, 105 U. S. 611; U. S. v. Britton, 107 U. S. 655, 2 Sup. Ct. 512; U. S. v. Trumbull, 46 Fed. 755.

"Under the principle established by those cases, the several counts of the present indictment must be tested, not by the general recitals and averments thereof, although in the words of the statutes, but by the specific acts or particular facts which are alleged to have been actually done and committed by the accused. If the particular acts or facts charged do not, as a matter of law, constitute contracts, combinations, or conspiracies in restraint of trade and commerce among the several states, or a monopoly or attempt to monopolize any part of such trade or commerce, no amount of averments and allegations that the accused 'engaged in a combination,' or 'made contracts in restraint' of such trade or commerce, or 'monopolized,' or 'attempted to monopolize,' the same, will avail to sustain the indictment. Whether the accused is charged with an offense is to be determined by the particular acts or facts set forth, and not by the conclusions of the pleader, although asserted in the words of the statute: 'Every offense consists of certain acts done or committed under certain circumstances, and in the indictment for the offense it is not sufficient to charge the accused generally with having committed the offense, but all the circumstances constituting the offense must be specifically set forth.' U. S. v. Cruikshank, 92 U. S. 542, 563." In re Greene, 52 Fed. 111.

I will not prolong this opinion by citing other decisions of the circuit and district courts, nor by making further reference to the decisions of the supreme court cited in the above quotation. The doctrine of those cases is fully upheld and applied to indictments founded upon section 5440, Rev. St., in the recent decision of that court in Pettibone v. U. S., 148 U. S. 197, 13 Sup. Ct. 542. In the opinion of the court in that case, by Mr. Chief Justice Fuller, it is said:

"This is a conviction for conspiracy, corruptly, and by threats and force, to obstruct the due administration of justice in the circuit court of the United States for the district of Idaho, and the combination of minds for the unlawful purpose and the overt act in effectuation of that purpose must appear charged in the indictment.

"The general rule in reference to an indictment is that all the material facts and circumstances embraced in the definition of the offense must be stated, and that, if any essential element of the crime is omitted, such omission cannot be supplied by intendment or implication. The charge must be made directly, and not inferentially, or by way of recital. U. S. v. Hess, 124 U. S. 483, 486, 8 Sup. Ct. 571. And in U. S. v. Britton, 108 U. S. 199, 2 Sup. Ct. 531, it was held, in an indictment for conspiracy under section 5440 of the Revised Statutes, that the conspiracy must be sufficiently charged, and cannot be aided by averments of acts done by one or more of the conspirators in furtherance of the object of the conspiracy. The courts of the United States have no jurisdiction over offenses not made punishable by the constitution, laws, or treaties of the United States, but they resort to the common law for the definition of terms by which offenses are designated.

"A conspiracy is sufficiently described as a combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful, by criminal or unlawful means; and the rule is accepted, as laid down by Chief Justice Shaw in Com. v. Hunt, 4 Metc. (Mass.) 111, that, when the criminality of a con-

spiracy consists in an unlawful agreement of two or more persons to compass or promote some criminal or illegal purpose, that purpose must be fully and clearly stated in the indictment, while, if the criminality of the offense consists in the agreement to accomplish a purpose not in itself criminal or unlawful, by criminal or unlawful means, the means must be set out."

In the case of U. S. v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, the defendant was convicted under an indictment founded upon section 5480, Rev. St., and which in the main followed the words of that section in charging the offense. The supreme court held it to be insufficient, and not aided by the verdict. Section 5480 is a statute directed against "devising, or intending to devise, any scheme or artifice to defraud," to be effected by communication through the post office. It is like section 5440. The case is strictly analogous to the case at bar, and the opinion by Mr. Justice Field is a complete refutation of the argument made before me in behalf of the government. The following brief extract shows the scope and bearing of the decision:

"The averment here is that the defendant, 'having devised a scheme to defraud divers other persons to the jurors unknown,' intended to effect the same by inciting such other persons to communicate with him through the post office, and received a letter on the subject. Assuming that this averment of 'having devised' the scheme may be taken as sufficiently direct and positive, the absence of all particulars of the alleged scheme renders the count as defective as would be an indictment for larceny without stating the property stolen, or its owner, or party from whose possession it was taken. The doctrine invoked by the solicitor general—that it is sufficient, in an indictment upon a statute, to set forth the offense in the words of the statute—does not meet the difficulty here. Undoubtedly, the language of the statute may be used in the general description of an offense; but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged."

The only difficulty in the way of granting the motion to discharge the prisoner lies in the fact that a demurrer to the indictment has been heretofore overruled by the court, and the reasons for such ruling are to me unknown. The record shows, however, that, as to the questions argued upon the demurrer to the indictment against Perrin, McNee, and Benson, the judges were divided in opinion, and that case was on that ground taken to the supreme court, but remanded without a decision of the questions certified. U. S. v. Perrin, 131 U. S. 55, 9 Sup. Ct. 681. The indictment in that case differs from the one now under consideration in several respects, and particularly in the important fact that the surveying contract set forth in that case was let to Perrin, who was by the indictment charged as a co-conspirator. Possibly, owing to the number of cases pending against Benson at the time, this difference was not brought to the attention of the court. With all the light that has been shed by the untiring efforts of learned counsel, I have not been able to discover any grounds for lawfully treating this case as exceptional. I am constrained by the law and the decisions of the supreme court to hold that the indictment which the petitioner is now held to answer is of no validity.

He is therefore entitled to be discharged, and it is so ordered.