## UNITED STATES v. BENSON.

(Circuit Court of Appeals, Ninth Circuit. November 8, 1895.)

### No. 171.

1. CRIMINAL PLEADING—CONSPIRACY—REV. ST. § 5440.
   In an indictment under Rev. St. § 5440, for conspiring to defraud the United States, it is sufficient to charge an unlawful combination and agreement as actually made, and in addition to describe any act by one of the parties, as an act relied on to show the agreement in operation, without showing how such act would tend to effect the object, or that the object was actually effected.

2. SAME.
   An indictment under Rev. St. § 5440, against B. and R., for conspiracy to defraud the United States, charged that B. and R. on a certain day did conspire together, etc., to defraud the United States of $2,500, in the manner following: That they, knowing that a contract had been made between one F., a United States deputy surveyor, and the United States surveyor general for California, for the survey of certain lands, to be made by F. personally, and the field notes thereof filed with the surveyor general, upon approval of which payments were to be made (the contract being set out in detail), and in pursuance of the conspiracy B., with the intent to effect the same, caused a fraudulent, fictitious, and pretended survey of the lands to be made, and fraudulent field notes to be made, whereby the surveyor general was deceived into certifying the amounts due to F. *Held,* that the indictment was sufficient, though it failed to show how the acts charged would tend to effect the fraudulent object, or that B. and R. had actually profited by the conspiracy.

Appeal from the Circuit Court of the United States for the Northern District of California.

This was a petition by John A. Benson to be discharged on habeas corpus from the custody of the marshal for the district of California, by whom he was held to answer an indictment for conspiracy. The circuit court discharged the petitioner. 58 Fed. 962. The government appeals. Reversed.

The indictment in this case is founded upon section 5440 of the Revised Statutes, as amended May 17, 1879 (21 Stat. 4; 1 Supp. Rev. St. p. 264), which reads as follows: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy all the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars, or to imprisonment for not more than two years or to both fine and imprisonment in the discretion of the court." The indictment contains three counts, each of which is of great length. The first count, in appropriate language, charges that John A. Benson and M. F. Reilly on a certain day "did unlawfully, corruptly, and wickedly conspire, combine, and agree together, and with divers other persons to the said grand jurors unknown, to defraud the United States of a large sum of money, to wit, the sum of twenty-five hundred [dollars], lawful money of the United States, by the means and in the manner following:

That is to say, that they, * * * well knowing that a certain contract had * * * been procured, secured, and entered into by and between John W. Fitzpatrick, then and there being a United States deputy surveyor in and for the state of California, on the one part, and W. H. Brown, then and there being the United States surveyor general in and for the state of California, on the other part, whereby the said John W. Fitzpatrick, in his capacity aforesaid, in substance and effect, undertook, agreed, and promised." Then follows a detailed statement of the terms and conditions of the contract to survey certain public lands, which are specifically described, and avers that Benson and Reilly had full knowledge thereof; that Fitzpatrick agreed that in his official capacity he would faithfully survey said lands, and establish and mark all the lines and corners thereof, in strict conformity with the laws of the United States, and complete the same, and return true field notes thereof to the surveyor general, on or before the 30th of June, 1885; that compensation was to be paid therefor at specified rates; that no accounts were to be paid therefor unless properly certified by the surveyor general, nor until approved plats and certified transcripts of the field notes should be filed in the general land office; that no payments were to be made for surveys not executed by said Fitzpatrick in his own proper person; that said contract was on December 17, 1884, approved by the commissioner of the general land office; that Fitzpatrick was officially notified thereof; that in pursuance of the aforesaid conspiracy, combination, confederacy, and agreement among them, and with full knowledge of all the facts, the defendant Benson, for the purpose and with the intent to effect the object of "the aforesaid conspiracy, did cause and procure a fraudulent, fictitious, and pretended survey of* the lands described in the aforesaid contract"; that defendant Benson, well knowing that said survey had not been made in strict conformity with the laws of the United States, or at all, and that the survey made by him was fictitious and pretended, for the purpose "and with the intent of imposing upon and deceiving" the surveyor general, and for the further purpose of procuring the surveyor general "to properly certify to the accounts and amount accruing to defendant under and by the terms of the aforesaid contract, and for the further purpose of securing approved plats and certified transcripts of the field notes of said pretended survey to be filed in the general land office, and with the intent and for the purpose of securing the payment from the United States of the contract price for said survey," and with the intent to corruptly, wickedly, and unlawfully defraud the United States out of the sum of $2,500, the said Benson on May 6, 1885, did cause and procure false, fictitious, and fraudulent field notes of the aforesaid false, fictitious, and pretended survey to be made of the lands specifically described, the same being public lands of the United States. The second count is substantially the same as the first, except that in stating the overt acts committed to effect the object of the conspiracy it avers that Benson on May 6, 1885, falsely pretending that the surveys had been properly made by Fitzpatrick according to the contract, with full knowledge to the contrary, and with the intent to impose upon and deceive the surveyor general, and for the purpose of fraudulently obtaining his official approval of said pretended survey, and procure the surveyor general to certify the accounts for said survey and of the amount due to Fitzpatrick under the contract, and the approval of the plats and certified transcripts of the field notes to be filed in the general land office, and for the purpose of defrauding the United States by securing the payment to him from the United States of the contract price for said survey, did make and cause to be made false, fictitious, and fraudulent field notes, etc., and that the surveyor general was by the said unlawful conspiracy of Benson and Reilly and the fraudulent acts of Benson "deceived into approving the said pretended survey and the said fictitious and fraudulent field notes, and into stating and certifying the amounts accrued to, and earned by the said John W. Fitzpatrick under and by the terms of the aforesaid contract." The third count is substantially the same as the first. The circuit court held this indictment to be wholly insufficient to charge Benson with any crime punishable by the laws of the United States, and discharged him upon habeas corpus. In re Benson, 58 Fed. 962. From this order the United States takes this appeal.

F. S. Stratton, Special Counsel, and Charles A. Garter, U. S. Atty., for the United States.

Reddy, Campbell & Metson, for appellee.

Before GILBERT, Circuit Judge, and HAWLEY, District Judge.

HAWLEY, District Judge (after stating the facts). Is the indictment in this case sufficient in law to constitute a crime punishable by the laws of the United States? The form of the indictment is certainly open to criticism. It is not as clear, concise, and direct in its averments as it might have been made. It is, as was said by the supreme court with reference to the form of an indictment in another of the Benson Cases, in U. S. v. Perrin, 131 U. S. 57, 9 Sup. Ct. 681, "so diffuse and obscure, presenting in no point a distinct issue of law on which the guilt of the defendants must rest, that it is impossible to decide any of the points without the most laborious wandering through the whole of the three counts of the indictment, and passing upon the whole question whether, under all the circumstances set out, the parties are liable to the indictment"; and for that reason the court declined to answer certain questions touching its sufficiency. Notwithstanding the labor involved, it becomes our duty, as best we can, to wander through the whole indictment and solve the troublesome question. The case comes to this court with the knowledge that there has been a wide divergence of opinion among the nisi prius judges who have, in one form or another, been called upon to decide the identical question here presented. A demurrer to the indictment was overruled by one without any opinion being filed, and his reasons therefor cannot be ascertained. Appellee was subsequently discharged by another on the sole ground of the insufficiency of the indictment, in a forcible and strong opinion, wherein his views are clearly and ably stated. In re Benson, 58 Fed. 962.

It is argued by appellee that the indictment is wholly insufficient in this, among other things: that it does not allege that the defendants named therein, or either of them, ever agreed to make any use of the contract entered into by Fitzpatrick, or of the accounts for the contract price of the survey, for the purpose of defrauding the United States; that neither Fitzpatrick nor the surveyor general is in any manner connected with the conspiracy; that there was never any assignment of the contract to Benson; that Benson is not shown to have had any interest therein, or any such connection therewith as to enable him to commit any fraud against the government of the United States; that no such fraud as is alleged could, by any of the acts of the conspirators, have been consummated either by the defendants, Fitzpatrick, or any other person or persons; that Benson could not have obtained any money on the vouchers given by the surveyor general, because the same were not payable to him; that no money could be paid to Fitzpatrick upon the accounts without his being a party to the conspiracy, which is not alleged; that the facts alleged are not sufficient to advise Benson of what particular offense he is called upon to meet. Is it necessary to allege that the defend-

ants named in the indictment, or either of them, would profit by the conspiracy, or to state the means by which the conspiracy was to be successfully carried out, or that any fraud was actually consummated, or that it should appear upon the face of the indictment in what particular manner the acts alleged to have been performed in pursuance of the unlawful agreement would tend to accomplish the object of the conspiracy? What facts are necessary to be alleged in the indictment in order to constitute an offense punishable under the provisions of section 5440? It will be observed by reference to the language of this section that it embraces two separate and distinct offenses, viz.: First, a conspiracy to commit an offense against the United States; second, a conspiracy to defraud the United States in any manner or for any purpose. It is made an essential element of these offenses that one or more of the alleged conspirators must have done some act to effect the object of the conspiracy. The facts alleged in the indictment must be considered with reference to the second offense above stated, to wit, a conspiracy to defraud the United States. It is important that these offenses should be kept separate, as to the requirements of an indictment under either. A reference to the authorities as to what is required under the first to show that an offense has been committed, or to indictment under other sections of the statute, unless there is a clear analogy between them and the essentials required under the second, would tend more to confuse than to enlighten the court as to the sufficiency of the present indictment. There are, of course, certain general rules, that are well settled, which apply to all indictments, and to these rules it will be necessary to refer.

At common law "conspiracy" is defined to be the unlawful confederacy and agreement of two or more persons to do an unlawful act, or a lawful act by unlawful means. The conspiracy constituted the offense, and it was frequently held that it was unnecessary to state the particular means by which the government or party was to be defrauded; that the felonious intent being charged, the means to effect the fraud were matters of evidence for the consideration of the jury; nor was it necessary to aver any overt act. The gist of the offense was the entering into the conspiracy. The bare combination and agreement constituted the crime. 2 Bish. Cr. Proc. §§ 207, 208, 217; 2 Bish. Cr. Law, §§ 171, 175, 191, 193, 198; 2 Russ. Crimes, 674 et seq. But the national courts cannot resort to the common law as a source of criminal jurisdiction. Crimes and offenses cognizable under the authority of the United States can only be such as are expressly designated by law. It devolves upon congress to define what are crimes, to fix their punishment, and to confer jurisdiction for their trial. U. S. v. Walsh, 5 Dill. 60, Fed. Cas. No. 16,636; U. S. v. Martin, 4 Cliff. 156, Fed. Cas. No. 15,728; In re Greene, 52 Fed. 104; Swift v. Railroad Co., 64 Fed. 59; U. S. v. Hudson, 7 Cranch, 32; U. S. v. Coolidge, 1 Wheat. 415; U. S. v. Britton, 108 U. S. 199, 206, 2 Sup. Ct. 531. We must therefore look elsewhere than to the common law for the test to be applied which will determine the validity of the indictment. Where the offense is

purely statutory, having no relation to the common law, it is, as a general rule, sufficient to charge the defendant, in the indictment, with the acts coming fully within the statutory description, in the substantial words of the statute, without any further elaboration. To this general rule should be added the qualification that the description of the offense in the indictment must be accompanied by a statement of all the particulars essential to constitute the offense, and must be sufficient to inform the accused as to what he must be expected to meet at the trial. U. S. v. Simmonds, 96 U. S. 362; U. S. v. Carll, 105 U. S. 612; U. S. v. Hess, 124 U. S. 483, 8 Sup. Ct. 571; Potter v. U. S., 155 U. S. 438, 15 Sup. Ct. 144.

Keeping in sight these general principles, we now come to the question as to what a conspiracy is, and what facts are necessary to constitute the offense under the particular provisions of section 5440, upon which the present indictment is based. A conspiracy is a combination of two or more persons by concerted action to accomplish some criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means. In other words, it is a combination formed by two or more persons to effect an unlawful end, said persons acting under a common purpose to accomplish the end desired. U. S. v. Babcock, 3 Dill. 581, 586, Fed. Cas. No. 14,487; U. S. v. Nunnemacher, 7 Biss. 111, 120, Fed. Cas. No. 15,902; In re Wolf, 27 Fed. 607; U. S. v. Thompson, 29 Fed. 86; U. S. v. Wootten, Id. 702; U. S. v. Owen, 36 Fed. 534. The essential elements of this offense, as applied to the charges in the indictment, are the alleged combination or conspiracy between the defendants to defraud the government of the United States out of the sum of $2,500, and the overt act or acts by them, or either of them, performed to effect the object of the conspiracy. In U. S. v. Nunnemacher, there were four counts in the indictment. The first three were based on section 3296 of the Revised Statutes, providing certain penalties for the removal of any distilled spirits on which the tax has not been paid. The fourth count was based upon section 5440. With reference to its sufficiency the court, in its charge to the jury, said:

"A conspiracy is formed when two or more persons agree together to do that which is unlawful,—in other words, when they combine to accomplish by their united action a criminal or unlawful purpose; and the statutory offense is complete when such agreement is made or such combination is entered into, and one or more of the parties does any act to effect the object of such conspiracy. To illustrate, if two or more persons agree together that by fraudulent practices they will deprive or defraud the government of the tax required to be paid on distilled spirits, and one or more of these persons does any act to effect the object of such agreement, they are guilty of the offense of conspiracy. * * * If the conspiracy is formed by all or some of the parties charged, and the act to effect the object of the conspiracy is done by only one of the parties, this constitutes a complete offense as to both or all of the members of the conspiracy, for in that case the act of one becomes the act of both or all. * * * Such connection with or relation to a conspiracy as the law takes notice of and punishes is not dependent upon personal pecuniary interest in the result of the unlawful adventure. Where there is an attempted attainment of an unlawful end by two or more persons, who are actuated by a common design of accomplishing that end, and who in any way and from any motive work together in furtherance of the unlawful scheme, each one of the persons becomes a member of the conspiracy."

In U. S. v. Sacia, 2 Fed. 755, the court in charging the jury, after reading section 5440 of the Revised Statutes, said:

"The offense * * * consists in two or more persons conspiring to defraud the government in any manner whatever, in a case where one or more parties to the conspiracy shall do any act to effect the object; that is, to effect the fraud. It need not be successful. It may fall short of the actual commission of the fraud. Merely agreeing or combining together to commit the fraud is sufficient to constitute the offense, without any loss to the government, if any one of the parties has taken a step towards its execution. The section is very sweeping in its terms, and was doubtless intended to meet the party to the fraud against the government on the very threshold of the perpetration of his crime, and to render him liable to its penalties before the consummation of the fraud."

See, also, U. S. v. Newton, 48 Fed. 218, 52 Fed. 275.

In U. S. v. Donau, 11 Blatchf. 168, Fed. Cas. No. 14,983, where there was a motion to quash the indictment, founded upon section 5440, the court said:

If the "indictment correctly charges an unlawful combination and agreement as actually made, and in addition describes any act by any one of the parties to the unlawful agreement, as an act intended to be relied on to show the agreement in operation, it is sufficient, although upon the face of the indictment it does not appear in what manner the act described would tend to effect the object of the conspiracy. It is sufficient if the act be so described as to apprise the defendant what act is intended to be given in evidence as tending to show that the unlawful agreement was put in operation, without its being made to appear to the court, upon the face of the indictment, that the act mentioned is necessarily calculated to effect the object of the unlawful combination charged. It is not the case of an attempt to commit crime. The crime is committed when the combination is made, and the act of one of the conspirators is not required by the statute to show the intent. That is inferred from the unlawful act of combining to defraud or to commit an offense, but the object of requiring proof of some act in furtherance of the unlawful agreement is to show that the unlawful combination became a living, active combination."

An indictment under section 5440, which avers the conspiracy and then sets out the overt acts done to carry it into effect, is sufficient, and it is not necessary to aver the means agreed on to effect the conspiracy. U. S. v. Dennee, 3 Woods, 50, Fed. Cas. No. 14,948; U. S. v. Goldman, 3 Woods, 192, Fed. Cas. No. 15,225; U. S. v. Dustin, 2 Bond, 332, Fed. Cas. No. 15,011; U. S. v. Sanche, 7 Fed. 715; U. S. v. Gordon, 22 Fed. 250; U. S. v. Adler, 49 Fed. 736. See, as to other offenses, U. S. v. Ulrici, 3 Dill. 535, Fed. Cas. No. 16,594; U. S. v. Simmonds, 96 U. S. 360; U. S. v. Britton, 107 U. S. 655, 661, 2 Sup. Ct. 512.

From the authorities we have cited and quoted from, it will be observed that the gist of the offense under the statute, as well as at common law, is the conspiracy. The cases quoted from and cited are principally decisions rendered in the respective circuits, and have no binding force upon this court, except such as may be found in the soundness of the reasons therein given. Our attention, however, has not been called to any decision of the supreme court which takes issue with the circuit courts as to the requirements of an indictment under the clause of section 5440 declaring it to be a conspiracy for two or more persons to conspire "to de-

fraud the United States in any manner or for any pur'pose." On the other hand, there are decisions which substantially affirm the doctrines announced in the circuit courts. Some of them have already been cited in the course of this opinion. In Dealy v. U. S., 152 U. S. 539, 14 Sup. Ct. 680, the question was as to the sufficiency of the indictment to sustain a conviction under section 5440 for a conspiracy to defraud the United States of the title and possession of large tracts of land of great value by means of false, feigned, illegal, and fictitious entries of said lands under the homestead laws of the United States; the said lands being public lands of the United States, open to entry, etc. It was there, among other things, objected that the indictment did not allege any particular tract of land of which the defendants conspired to defraud the United States. Mr. Justice Brewer, in delivering the opinion of the court, said:

"It is true, no tract is named by number of section, township, and range, and the language is broad enough to include any or all the public lands of the United States situate within that county and subject to homestead entry at the land office. But manifestly the description in the indictment does not need to be any more definite and precise than the proof of the crime. In other words, if certain facts make out the crime, it is sufficient to charge those facts, and it is obviously unnecessary to state that which is not essential. Can it be doubted that if these defendants entered into a conspiracy to defraud the United States of public lands, subject to homestead entry, at the given office in the named county, the crime of conspiracy was complete, even if no particular tract or tracts were selected by the conspirators? It is enough that their purpose and their conspiracy had in view the acquiring of some of those lands, and it is not essential to the crime that in the minds of the conspirators the precise lands had already been identified."

The entire opinion is instructive upon many points. We pass to the last objection there urged,—that the overt acts are not charged to have been done within the limits of the United States. In replying to this the court said:

"The solicitation was to do a wrongful act within the state of North Dakota. In re Palliser, 136 U. S. 257, 265, 10 Sup. Ct. 1034. And that solicitation was not a part of the conspiracy, but subsequent to and in furtherance of it. The gist of the offense is the conspiracy. As said by Mr. Justice Woods, speaking for this court, in U. S. v. Britton, 108 U. S. 199, 204, 2 Sup. Ct. 531: 'This offense does not consist of both the conspiracy and the acts done to effect the object of the conspiracy, but of the conspiracy alone. The provision of the statute that there must be an act done to effect the object of the conspiracy merely affords a locus pœnitentiæ, so that before the act done either one or all of the parties may abandon their design, and thus avoid the penalty prescribed by the statute.' Hence, if the conspiracy was entered into within the limits of the United States and the jurisdiction of the court, the crime was then complete, and the subsequent overt act in pursuance thereof may have been done elsewhere."

Viewed from the standpoint of good pleading, the weakest point in the indictment is perhaps found in the descriptive words: "By the means and in the manner following: That is to say." But in answer to this, as well as to the further question whether it properly informs defendant Benson as to what he is accused of, we content ourselves by quoting the language of the supreme court, in reply to like objections, in Potter v. U. S., 155 U. S. 438, 445, 15 Sup. Ct. 144, as follows:

"It is generally true, as claimed, that where an indictment is unnecessarily descriptive even the unnecessary description must be proved as laid; but that proposition does not seem to be in point, for it is not claimed that the testimony did not show just such a writing as is charged to have been made by the defendant, and surely it cannot be claimed that unnecessary matter of description must be proved otherwise than as it is stated. While there is plausibility in the contention of counsel, yet we think it would be giving an unnecessary strictness to the language of the indictment to adjudge it insufficient, or to hold that it failed to inform the defendant exactly of what he was accused, or lacked that precision and certainty of description which would enable him to always use a judgment upon it as a bar to any other prosecution; and that, as we all know, is the substantial purpose of a written charge."

The judgment of the circuit court is reversed, and the cause remanded for further proceedings in accordance with the views expressed in this opinion.