McKELVEY et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 7, 1917.)

No. 2807.

1. CONSPIRACY ⬦⟺43(9)—INDICTMENT—CONSPIRACY TO COMMIT CRIME.
Criminal Code (Act March 4, 1909, c. 321) § 37, 35 Stat. 1096 (Comp. St. 1916, § 10201), provides that if two or more persons conspire to commit any offense, and one of them does any act to effect the object of the conspiracy, each shall be fined, etc. Section 215 (Comp. St. 1916, § 10385) provides that whoever, having devised any scheme to defraud, etc., shall, to execute it, place any letter in any post office, etc., shall be fined, etc. An indictment charged that defendants conspired to commit an offense under section 215, and that it was a part of such conspiracy to accomplish and attempt to accomplish it by means of the mails, and to mail letters to the persons intended to be defrauded, and that two described letters were mailed in pursuance of the conspiracy. Held, that the indictment sufficiently charged conspiracy to use the mails to effect the conspiracy.
[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 86, 96.]

2. CONSPIRACY ⬦⟺43(9)—INDICTMENT—CONSPIRACY TO COMMIT CRIME.
The indictment was sufficient as against the objection that the charges that defendants deposited letters in the post office department were charges of overt acts, and the only charges that the post office was used in executing the scheme to defraud, and that these charges could not be used to strengthen the charge of conspiracy, since the overt act which completes a conspiracy is a part of the conspiracy.
[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 86, 96.]

3. CRIMINAL LAW ⬦⟺371(1)—EVIDENCE—OTHER OFFENSES—INTENT.
On a trial for conspiring to commit the offense of using the mails in furtherance of a scheme whereby persons were to be defrauded by blackmailing suits and threats thereof, evidence as to suits instituted by defendants about the same time and of like character to those involved in the indictment was admissible to show intent, when properly limited by the court to this purpose.
[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 830, 831.]

4. CRIMINAL LAW ⬦⟺1169(1)—APPEAL—HARMLESS ERROR—ADMISSION OF EVIDENCE.
The admission of evidence not prejudicing defendants was not reversible error.
[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3130, 3137.]

5. CRIMINAL LAW ⬦⟺829(2)—INSTRUCTIONS COVERED BY THOSE GIVEN—"CONSPIRACY."
On a trial for conspiracy to commit a crime, the court charged that a "conspiracy" was a combination between two or more persons to do a criminal or unlawful act, or a lawful act by criminal or unlawful means; that there could be no conspiracy where an individual acted by and for himself; that a merely mental purpose could not justify a conviction, a common design being of the essence; that a person, to become a party to a conspiracy, must combine with some one else to effect its object by

means agreed upon; that where circumstantial evidence was relied upon to establish the conspiracy, or any other fact, it was not only necessary that the circumstances concur to show the existence of the conspiracy, or other fact, but that it must be inconsistent with any other rational conclusion; and that, if the evidence could be reconciled either with innocence or guilt, the law required that defendant be given the benefit of the doubt, and that the theory of innocence be adopted. *Held*, that these instructions sufficiently covered a requested instruction that it needed something more than proof of mere passive cognizance of fraudulent or illegal action of others to sustain a charge of conspiracy; that before the jury could convict one defendant they must find that he did something more than entertain a mere passive cognizance, and they must find from the evidence beyond a reasonable doubt that he did some act or made some agreement showing an intent to participate in the conspiracy.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2011.

For other definitions, see Words and Phrases, First and Second Series, Conspiracy.]

In Error to the District Court of the United States for the Southern Division of the Southern District of California.

Charles S. McKelvey and another were convicted of conspiracy, and they bring error. Affirmed.

Indictment under Act March 4, 1909, c. 321, § 37, charging plaintiffs in error with a conspiracy to commit acts made an offense by section 215 of the same act; the offense being a conspiracy to cheat, wrong, and defraud certain persons named in the indictment, and to use the United States mail in furtherance thereof. Verdict of guilty, upon which the court entered judgment, imposing a fine of $2,500 upon each of the plaintiffs in error, and sentencing plaintiff in error Stevens to imprisonment in the county jail for six months.

Plaintiffs in error at the time of the indictment were attorneys at law in Los Angeles, Cal., having adjoining offices, both using a common reception room, and employing a stenographer who was required to do the work of each. Plaintiff in error Stevens had been appointed by the superior court of California to represent as guardian ad litem and defend the minor, Irene Marie Brown-Levy (now Mrs. Van Houten) in a divorce proceeding brought by her then husband. While consulting with Stevens concerning her defense to the divorce proceeding, Mrs. Levy disclosed to him certain illicit relations that existed between herself and certain other young women, on the one part, and certain men who resorted to a place known as the Jonquil Apartments, in Los Angeles, for such purposes. It appears that at the time of this communication the grand jury was investigating the actions of the inmates of the Jonquil Apartments and those who resorted there. Thereafter Mrs. Levy and other young women who were inmates of the Jonquil Apartments called upon plaintiff in error Stevens at his office and conferred with him as to bringing actions to recover damages for the injury to their health because of the practices of the men who had visited them.

It is charged in the indictment that plaintiffs in error conspired to devise a scheme to defraud W. H. Evans and Kyle MacBratney and others out of their money and property, by representing and pretending to such persons that the plaintiffs in error had within their knowledge certain lewd, lascivious, indecent, scandalous, and disgraceful conduct, acts, and crimes theretofore committed by such persons, which would tend to disgrace and degrade them, and which the plaintiffs in error would threaten to make public and divulge to the world in complaints by Mrs. Levy to be filed in court, unless such persons would pay to the plaintiffs in error such sums as plaintiffs in error might or could secure by means of such threats; that it was a part of the conspiracy to accomplish and effect the scheme to defraud by means of the post office establishment of the United States by depositing in the United States post office at Los Angeles and in the stations thereof letters addressed to the persons intended to be defrauded, to be sent and delivered to those persons by the post office establishment of the United States; and that in pursuance of the conspir-

acy and scheme to defraud, and for the purpose of effecting and executing the same, the plaintiffs in error, on the 17th day of June, 1913, mailed, in the United States post office at Los Angeles, the two letters set out in the indictment.

The assignments of error relate to the action of the court in overruling defendants' demurrers to the indictment, in overruling defendants' objections to the admission of certain evidence, and in refusing to give an instruction requested by the defendant McKelvey.

Charles J. Kelly, of Los Angeles, Cal., for plaintiffs in error.

Albert Schoonover, U. S. Atty., and J. Robert O'Connor, Asst. U. S. Atty., both of Los Angeles, Cal.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). [1] 1. It is contended by the plaintiffs in error that the indictment fails to charge a conspiracy under the statute. Section 37 of the Act of March 4, 1909 (35 Stat. 1088, 1096, c. 321), entitled "An act to codify, revise, and amend the penal laws of the United States," provides:

"If two or more persons conspire * * * to commit any offense against the United States, * * * and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined," etc.

Section 215 of the same act (page 1130)—so far as material to this case—provides:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * * shall, for the purpose of executing such scheme or artifice or attempting so to do, place, or cause to be placed, any letter * * * in any post office, or station thereof, * * * to be sent or delivered by the post office establishment of the United States, * * * shall be fined," etc.

The indictment charges that the defendants, on June 1, 1913, in the city of Los Angeles, conspired, combined, confederated, and agreed together to commit an offense against the United States; that is, to commit acts made an offense and crime by section 215 of the Act of March 4, 1909 (chapter 321), entitled "An act to codify, revise, and amend the penal laws of the United States." The indictment then proceeds to charge the defendants with acts constituting a scheme to defraud certain persons, charging acts made an offense against both sections 37 and 215 of the Criminal Code, namely:

"* * * And it was a part of said conspiracy of said conspirators, for the purpose of executing and effecting said scheme and artifice to defraud, and attempting so to do, to accomplish and effect, and attempt to accomplish and effect, the same by means of the post office establishment of the United States, and to place and cause to be placed in the United States post office in said city of Los Angeles, and in the stations thereof, letters addressed to said persons so intended to be defrauded, to be sent and delivered to said persons by the post office establishment of the United States."

The indictment then proceeds to set forth two letters mailed by the defendants in pursuance of said conspiracy—one dated June 17, 1913, and the other August 8, 1913.

· The objection is that the charging part of the indictment makes no charge that the conspirators, at the time of forming said conspiracy, or at any other time, conspired to use the mails or post office establishment of the United States for the purpose of effecting or carrying out such conspiracy. But the first clause of the indictment makes the direct charge that the conspirators, to accomplish and effect the conspiracy, conspired to commit acts made an offense by section 215 of the Criminal Code. The indictment then proceeds to charge a scheme to defraud certain persons, and alleges that *it was a part of said conspiracy* to use the mails and the post office establishment of the United States for the purpose of effecting and carrying out that conspiracy. This last charge is not the allegation of an isolated act, or a mere recital or conclusion of the pleader, but a direct and positive charge that the use of the mails and post office establishment formed a part of, and was the essential act of, the conspiracy to commit an offense against the United States.

[2] 2. The further objection is made to the indictment that the charges against the defendants that they deposited the letters in the post office department are the charges of overt acts, and are the only charges that the post office was used in executing and effecting the scheme to defraud, and it is contended that these charges cannot be used to strengthen the charge of conspiracy, citing the case of United States v. Britton, 108 U. S. 199, 204, 2 Sup. Ct. 531, 534 (27 L. Ed. 698) where the Supreme Court said:

"This offense [conspiracy] does not consist of both the conspiracy and the acts done to effect the object of the conspiracy, but of the conspiracy alone. * * * It follows as a rule of criminal pleading that, in an indictment for conspiracy under section 5440 [Comp. St. 1916, § 10201], the conspiracy must be sufficiently charged, and that it cannot be aided by the averments of acts done by one or more of the conspirators in furtherance of the object of the conspiracy."

This decision was cited in Hyde v. United States, 225 U. S. 347, 358, 32 Sup. Ct. 793, 799 (56 L. Ed. 1114, Ann. Cas. 1914A, 614), in support of a similar objection in that case. The court, in overruling the objection, said:

"It is true that the conspiracy, the unlawful combination, has been said to be the crime, and that at common law it was not necessary to aver or prove an overt act; but section 5440 has gone beyond such rigid abstraction, and prescribes, as necessary to the offense, not only the unlawful conspiracy, but that one or more of the parties must do an 'act to effect' its object, and provides that when such act is done 'all the parties to such conspiracy' become liable. Interpreting the provision, it was decided in Hyde v. Shine, 199 U. S. 62, 76 [25 Sup. Ct. 760, 50 L. Ed. 90], that an overt act is necessary to complete the offense. And so it was said in United States v. Hirsch, 100 U. S. 33 [25 L. Ed. 559], recognizing that, while the combination of minds in an unlawful purpose was the foundation of the offense, an overt act was necessary to complete it. It seems like a contradiction to say that a thing is necessary to complete another thing, and yet that other thing is complete without it. It seems like a paradox to say that anything, to quote the Solicitor General, 'can be a crime of which no court can take cognizance.' The conspiracy, therefore, cannot alone constitute the offense. It needs the addition of the overt act. Such act is something more, therefore, than evidence of a conspiracy. It constitutes the execution or part execution of the conspiracy, and all incur guilt by it, or rather complete their guilt by it, consummating a crime by it, cognizable then by the judicial tribunals, such tribunals only then acquiring jurisdiction."

The opinion of the Circuit Court of Appeals in Hendrey v. United States, 233 Fed. 5, 11, 147 C. C. A. 75, is also cited by the plaintiffs in error as pointing out objections to the indictment in that case which it is contended are applicable to the indictment in this case. The objections are all substantially embraced in the query suggested by the court:

"How the actual commission of the crime can be the overt act which completes the conspiracy, unless the same act is made two crimes by different names, and so is to be twice punished?"

The answer is that the overt act which completes a conspiracy is a part of the conspiracy requiring the combination of two or more persons to commit, while the commission of an act by an individual unconnected with a conspiracy is the act of the individual alone, and may or may not be a crime. Aikens v. Wisconsin, 195 U. S. 194, 206, 25 Sup. Ct. 3, 49 L. Ed. 154.

But the objection that the overt act which completes the conspiracy makes two crimes by different names, and renders the offenders liable to be twice punished for the same act, is further answered by the Supreme Court in Heike v. United States, 227 U. S. 131, 144, 33 Sup. Ct. 226, 229 (57 L. Ed. 450, Ann. Cas. 1914C, 128), where the court said:

"Again it is said that, if the evidence proved the petitioner guilty of a conspiracy, it proved him guilty of the substantive offense. * * * At all events the liability for conspiracy is not taken away by its success—that is, by the accomplishment of the substantive offense at which the conspiracy aims."

Also in United States v. Rabinowich, 238 U. S. 78, 85, 35 Sup. Ct. 682, 683, 684 (59 L. Ed. 1211), where the court said: ·

"* * * A conspiracy to commit a crime is a different offense from the crime that is the object of the conspiracy. * * * The conspiracy, however fully formed, may fail of its object, however earnestly pursued. The contemplated crime may never be consummated; yet the conspiracy is none the less punishable. * * * And it is punishable as conspiracy, though the intended crime be accomplished."

· In United States v. Young, 232 U. S. 155, 34 Sup. Ct. 303, 58 L. Ed. 548, the indictment contained two counts. It was objected to the first count that it failed to allege how the scheme to defraud certain banks therein mentioned was to be executed, and did not directly allege in either count that the scheme devised was to be executed by the use of the post office establishment or mails of the United States. The District Court sustained a demurrer to the indictment, holding that the scheme described was not unlawful, unless the use of the mails was a part of the scheme; that the indictment must affirmatively allege every fact necessary to constitute the offense sought to be charged, that the court may see that an unlawful scheme had been devised; that the implication of a material and essential fact could not supplant the place of a direct averment; that there was no allegation that the banks to be defrauded had seen the statement sent through the mails to brokers who were to induce the banks to loan their money upon the scheme; that the banks had no knowledge of these statements

or of their contents, or that they were intended to deceive the banks and induce them to loan their money, except as this might be implied from the allegation that the statements were sent to the brokers. The Supreme Court reversed the decision of the District Court, holding that under section 215 of the Criminal Code it is only necessary to charge that the scheme was devised, or intended to be devised, and a letter placed in the post office for the purpose of executing this scheme, or attempting to do so.' Plainly the indictment in the present case, measured by this decision, is sufficient.

The case of Joplin Mercantile Co. v. United States, 236 U. S. 531, 35 Sup. Ct. 291, 59 L. Ed. 705, cited by plaintiffs in error in support of their demurrer to the indictment, does not hold a contrary rule. In that case it was held that, where the averment respecting the formation of the conspiracy refers to no other clause for certainty as to its meaning, it should be interpreted as it stands, and, so interpreted, it was held to be sufficient, and not insufficient as plaintiffs in error seem to contend. The charge in that indictment was that the defendants conspired to commit an offense against the United States, to wit, to unlawfully, etc., introduce liquors into the Indian country and into other parts and portions of that part of Oklahoma which lies within the Indian country. The objection was that the indictment did not in terms allege, as part of the conspiracy, that the liquor was to be brought from *without the state of Oklahoma,* nor did the clause refer for light upon its meaning to the clauses that set forth the *overt acts.* It was objected, further, that the indictment was vague and indefinite as to the destination of the liquors as intended by the conspirators, and did not apprise the defendants with certainty of the offense with which they stood charged, so as to enable them to prepare their defense. The Supreme Court held that the charge related only to intrastate transactions, and could not be construed as including interstate transactions because of other averments as to the overt acts of some of the conspirators. The court held further that the conspiracy looked to the introduction of intoxicating liquors into those portions of the state of Oklahoma that lie within the Indian country, and presumably the defendants did not, at the time of conspiring, specify any particular points in the Indian country to which the liquors should be shipped. The indictment was held sufficient, and the opinion fully sustains the indictment in the present case, wherein the defendants were fully and specifically informed of the charge against them, and that the mailing of the letters was a part of the conspiracy.

[3] 3. It is next contended that the court erred in admitting testimony of certain witnesses called by the government to testify in reference to suits instituted by the defendant Stevens in the superior court of Los Angeles county about the same time and of like character to the suits and threatened suits involved in the indictment in this case. The objection is that the conspiracy ended with the sending of the letter of August 8, 1913, and these suits were commenced subsequently, and were therefore inadmissible.

But a conspiracy does not necessarily end with the overt act mentioned in the indictment. The purpose of setting forth an overt act

in the indictment is, not to fix a limit of time to the existence of the conspiracy, but for the purpose of bringing the conspiracy within the terms of the statute by alleging an act done to effect the object of the conspiracy. The conspiracy in this case was a scheme to defraud certain parties, in obtaining money from them by means of false and fraudulent pretenses and representations. For the purpose of executing this scheme, the letters were mailed by the defendant Stevens. The mailing of the letters was merely a part of the conspiracy, but not the final acts; they were intermediate acts, the purpose of which was to bring the parties to be defrauded to the office of the defendant, where, by means of fraudulent pretenses and representations, they would be made to yield to the demands of the defendants. The last act of the conspiracy, of which the mailing of the letters was a part, was the obtaining of the money by such false and fraudulent pretenses and representations.

But we need not dwell upon this feature of the evidence further than to say that it was not offered or introduced for the purpose of proving the particular conspiracy mentioned in the indictment, or any overt act as a part of such conspiracy, but was offered and admitted as tending to show that at about the same time defendant brought other suits of a like character and for a like purpose against other defendants, from which the jury might infer the intent with which such suits were being brought and prosecuted, and the evidence was so limited by the court in its instructions to the jury.

[4] 4. There are further assignments of error in the admission of testimony in the course of the trial; but no sufficient objections were taken to the ruling of the court in admitting such testimony, and, as it does not appear that the defendants were in any way prejudiced by such ruling, we find no reversible error.

[5] 5. Error is assigned to the refusal of the court to give the following instruction, requested by the plaintiffs in error:

"You are instructed that it needs something more than proof of mere passive cognizance of fraudulent or illegal action of others to sustain the charge of conspiracy, and before you can convict the defendant McKelvey, you must find that the defendant McKelvey did something more than entertain a mere passive cognizance of such conspiracy. You must find from the evidence, beyond a reasonable doubt and to a moral certainty, that he did some act or made some agreement showing an intent to participate in some way in such conspiracy."

We find this instruction given by the court, in substance, in a series of instructions covering the evidence necessary to establish a conspiracy. These instructions were that a conspiracy is a combination between two or more persons to do a criminal or unlawful act, or a lawful act by criminal or unlawful means; that there can be no conspiracy where one individual acts by and for himself only; that a merely mental purpose cannot justify a conviction of conspiracy, as a common design is of the essence of the charge; that a person, in order to become a party to a conspiracy, must combine with some one else to effect the object of the conspiracy by the means agreed upon; that, where circumstantial evidence is relied upon to establish the conspir-

acy, or any other fact, it is not only necessary that all the circumstances concur to show the existence of the conspiracy or other fact sought to be proved, but such circumstantial evidence must be inconsistent with any other rational conclusion; that, if the evidence can be reconciled either with the theory of innocence or with guilt, the law requires that the defendant be given the benefit of the doubt, and the theory of innocence be adopted. These instructions, we think, covered all there was in the requested instruction.

We find no reversible error in the record, and the judgment is accordingly affirmed.