## RIDDLE et al. v. UNITED STATES.*

(Circuit Court of Appeals, Fifth Circuit. February 15, 1922.)

No. 3773.

1. **Conspiracy ☞27, 37—Is separate offense from intended crime.**

   A conspiracy to commit a crime may be a completed offense, even if the intended crime be not committed, and is a separate offense when such crime has been accomplished.

2. **Conspiracy ☞43(9)—Indictment for conspiracy to use mails to defraud held sufficient.**

   An indictment for conspiracy to commit the offense of using the mails to defraud, as defined in Penal Code, § 215 (Comp. St. § 10385), held to sufficiently charge the intended use of the mails to effect the object of the conspiracy.

3. **Criminal law ☞1148—Granting or refusing separate trials of defendants discretionary.**

   The granting or refusing separate trials to defendants jointly charged rests in the legal discretion of the court, and its action is reviewable only for an abuse of discretion.

4. **Witnesses ☞370(3)—Impeaching question held irrelevant.**

   Where a witness on cross-examination admitted that he was unfriendly to one of defendants, because as an attorney he had prosecuted a son of the witness, a further question, designed to show that the son was guilty, held properly excluded as irrelevant.

5. **Criminal law ☞753(2), 1159(2)—Verdict should not be directed, if substantial evidence supports conviction; weight of evidence cannot be considered by appellate court.**

   A verdict for defendant should not be directed, if there is any substantial evidence to support a verdict of conviction, and its weight cannot be considered on a writ of error.

In Error to the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

Criminal prosecution by the United States against D. H. Riddle, W. O. Wooten, S. E. Graham, and T. A. St. John. Judgment of conviction, and defendants bring error. Reversed as to defendant Graham, and affirmed as to the remaining defendants.

Hugo L. Black, of Birmingham, Ala., W. M. Lackey, of Ashland, Ala., and L. H. Ellis, of Columbiana, Ala., for plaintiff in error Riddle.

E. M. Smith, of McDonough, Ga., and Gordon, Morrill & Ginter, for plaintiff in error Wooten.

George Pegram, of Faunsdale, Ala., for plaintiff in error Graham.

E. M. Smith, of McDonough, Ga., and S. W. Tate, of Anniston, Ala., for plaintiff in error St. John.

Erle Pettus, U. S. Atty., of Birmingham, Ala.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. The plaintiffs in error were indicted, with three other persons, for sending letters through the United States mails to defraud and for a conspiracy to so use the mails. The indictment originally contained seven counts. Counts 1 and 3 were stricken on demurrer. Counts 6 and 7 were withdrawn from the consideration of the jury, and the case was submitted on counts 2, 4, and 5. All of the

*Certiorari denied 257 U. S. —, 42 Sup. Ct. 589, 66 L. Ed. —.

defendants were convicted. A motion for a new trial was overruled by the court. Three of the defendants acquiesced in the judgment of conviction. The plaintiffs in error prosecute this writ of error to reverse said judgment.

The second count of the indictment charged said defendants, with others unknown, with devising a scheme to defraud the Buffalo Manufacturing Company, at Shelby, N. C., and to obtain money from it by selling to it 100 bales of cotton, represented to be strict middling, 1 to 1¹¹/₁₆ inch staple, weighing 49,592 pounds, each of which representations were knowingly untrue and false; said weights of said cotton were represented to be far in excess of, and its grades and quality superior to, the actual weights, grades, and quality; that to carry said scheme into effect defendants mailed from Talladega, Ala., to H. T. Lampkin & Co., of Charlotte, N. C., a letter inclosing an invoice, bill of lading, and detailed weight sheet for said 100 bales of cotton, which was delivered by the United States mail to said Lampkin & Co.

Count 4 alleged a like scheme to defraud the Entwistle Manufacturing Corporation, at Rockingham, N. C., by the sale to it of 100 bales of cotton, which defendants fraudulently represented and pretended to be good middling, light tinges, 1 to 1¹/₁₆ inch staple, and to weigh 49,239 pounds, said representation as to grade and weight being known at the time by defendants to be false and untrue, and said grades and quality being represented as far superior and the weights in excess of the actual weights, grades, and quality of said cotton, and were made in order to defraud and obtain money from said Entwistle Manufacturing Corporation; that to execute said scheme said defendants mailed from Talladega, Ala., on March 23, 1918, a letter addressed to H. T. Lampkin & Co., at Charlotte, N. C., signed "Savage Cotton Company, Inc., per W. A. Savage, General Manager," which letter inclosed copies of the invoices and weight sheets on said 100 bales of cotton, which letter was delivered by the post office establishment of the United States to said Lampkin & Co.

Count 5 of said indictment charged said defendants with unlawfully conspiring, in violation of section 37 of the Penal Code (Comp. St. § 9558), to commit an offense against the United States, in violation of secton 215 of the Penal Code (Comp. St. § 10385), to use the mails to defraud, and as overt acts to effect said conspiracy charged:

(1) The drawing of a three-day sight draft by W. A. Savage, A. M. Savage, and W. O. Wooten, on March 19, 1918, for $32,790.88, on the Icemorlee Cotton Mills, of Monroe county, N. C. (2) That W. A. Savage, on April 1, 1918, caused to be mailed in the post office at Talladega, Ala., a certain letter addressed to H. T. Lampkin & Co., Charlotte, N. C., signed "Savage Cotton Company, Inc., per W. A. Savage, General Manager," reciting that it enclosed detailed weight sheets and invoices on 100 bales of cotton shipped to Monroe, N. C., and also 200 bales of cotton shipped to Greensboro, N. C. (3) That W. A. Savage, on March 7, 1918, caused to be mailed at Talladega, Ala., a letter addressed to J. S. Westerfelt & Co., Greenville, S. C., signed "Savage Cotton Company, Inc., per W. A. Savage, Manager," which letter recited that it inclosed copies of bill of lading, invoice, and weight sheet

on the 100 bales of cotton shipped to Woodside Cotton Mills, Greenville, S. C. (4) That W. A. Savage, on March 19, 1918, drew a three-day sight draft for $33,503.94 on the Icemorlee Cotton Mills, Monroe, N. C., for 200 bales of cotton of the weights therein stated. (5) That W. A. Savage caused to be mailed at Talladega, Ala., on March 9, 1918, a letter addressed to Icemorlee Cotton Mills, Monroe, N. C., signed "Savage Cotton Company, Inc., per W. A. Savage, General Manager," which recited that he therein inclosed invoices, detailed weight sheets, bills of lading, on 100 B/C marked "FMBC," 100 B/C marked "JCMT," 100 B/C marked "PAWT," and 100 B/C marked "RMFX," all of which were shipped to said mills at Monroe, N. C.

It appears that the Savage Cotton Company, Inc., was a corporation formed on November 9, 1917, to do business at Talladega, Ala., engaged in the business of buying and selling cotton. The original shareholders were H. W. Savage, the wife of W. A. Savage, A. M. Savage, W. M. George, T. M. Stanford, and D. H. Riddle. Each of these persons became directors of said corporation—A. M. Savage its president and treasurer, W. M. George its secretary, D. H. Riddle its vice president and general counsel, and W. A. Savage its general manager. The chief executive officer of the corporation seems to have been W. A. Savage. The money originally put into the company was borrowed from the Isbell National Bank, which loan was procured by D. H. Riddle upon a note signed by the subscribers to the stock of the company and indorsed by said Riddle. It was testified without contradiction that this money was put to the credit of the company, but by agreement with the bank was payable only on checks given for cotton purchased, which checks were to be countersigned by D. H. Riddle, vice president, so long as the note remained unpaid. The note was paid on December 19, 1917. On January 2, 1918, a resolution was adopted requiring that all checks and drafts drawn by the corporation on any bank or funds should be signed "Savage Cotton Company, Inc.," by its treasurer, and countersigned by W. A. Savage, general manager.

Until some time in February business appears to have proceeded without any irregularity, but commencing about the 1st of March shipments would be made of cotton sold as strict middling, or good middling, 1 to $1^1/_{16}$ inch staple, drafts would be drawn for the price of this cotton thus described, for the weights stated in the draft, and the purchaser notified through the mails, with a copy of the bill of lading, copy weight sheets, and invoices, containing these false statements as to weights, grades, and quality, and when the cotton arrived the bales were found to be very small, great shortage existed in the weights, and the grade of the cotton was very low.

A great deal of the weighing was done by T. A. St. John, who was in the employ of the Savage Cotton Company, Inc., and there was evidence that many of the weight sheets were made by him or from data furnished by him. The manager of the compress where all of this cotton was compressed, and from which it was shipped, was W. O. Wooten, as to whom there was evidence to the effect that he was closely associated with the business of the Savage Cotton Company, Inc., that his name was used in making loans from the Isbell National Bank,

where the Savage Cotton Company, Inc., exceeded its borrowing limit with said bank under the National Bank Act, and that he took part in the negotiations with purchasers arising out of the failure of the cotton shipped to come up to representations as to grade, quality, and weight. Much of the cotton was shipped over the Atlanta, Birmingham & Atlantic Railway Company, of which A. S. Hardy was the agent; S. E. Graham being cashier in his office.

There was irregularity about the issuance of bills of lading; it being charged that they were issued before the cotton was in the hands of the railroad company, and that, when it became necessary to furnish to the railroad company bales of cotton to the number for which bills of lading were issued, the bales were split by the compress, and very light bales were furnished, of a very poor quality, entirely different from the weights and grades stated in the invoices and weight sheets of the Savage Cotton Company, Inc. All of the bills mentioned in the indictment or issued in any transaction therein stated were issued by the defendant Hardy.

The evidence in the case shows that as a result of these transactions the customers of the Savage Cotton Company, Inc., were defrauded of something like $200,000 or more, and the principal question in this case is whether the evidence adduced is sufficient to connect each defendant with the fraudulent use of the mails and the conspiracy to use the same, charged in the indictment. The assignments of error are many, but reduce themselves to comparatively few questions:

[1] 1. We do not think that the court erred in overruling the demurrers filed to the counts of the indictment upon which this case was tried. The demurrers principally insisted on are to the sufficiency of the fifth count. A conspiracy may be a completed offense, even if the intended crime be not consummated (Williamson v. United States, 207 U. S. 425, 447, 28 Sup. Ct. 163, 52 L. Ed. 278), and is a separate offense when such crime has been accomplished (Heike v. United States, 227 U. S. 131, 33 Sup. Ct. 226, 57 L. Ed. 450, Ann. Cas. 1914C, 128).

[2] This count of the indictment charged a conspiracy to defraud and alleged five overt acts. It further charged that said scheme "was to be and was in fact effected by the use of the mails, and for the purpose of executing said scheme and artifice and attempting to do so the mails and post office establishment of the United States were to be and were in fact used by" the named defendants, and for the purpose of effecting the object of the said conspiracy one or more of the coconspirators did or caused to be done certain acts (setting out five acts).

As is pointed out by the Supreme Court of the United States, the crime denounced under section 215 of the Penal Code is not the formation of a scheme to defraud by use of the United States mails, but the formation of a scheme to defraud and the placing of a letter in the United States post office to be sent or delivered by the post office establishment. United States v. Young, 232 U. S. 155, 161, 34 Sup. Ct. 303, 58 L. Ed. 548. This count of the indictment required proof that the conspiracy charged should be effected by the use of the United States mails. Proof of the doing thereunder of any of the overt acts

did not dispense with proof of the charges therein respecting the use of the mails, and the criticism that a conviction could be had thereunder without such proof is not sound.

"It is not essential, however, that the indictment should show the success of the conspiracy. Nor need it show in what manner the overt act will tend to accomplish the object of the conspirators. If an unlawful combination to defraud the United States is alleged, together with an act by one of the parties to show the agreement in operation, this is sufficient without showing how the act would tend to effect the object, or that it was effected. U. S. v. Benson, 17 C. C. A. 293, 70 Fed. 591; U. S. v. Dennee, 3 Woods, 47, Fed. Cas. No. 14,948; U. S. v. Donau, 11 Blatchf. 168, Fed. Cas. No. 14,983." Gantt v. United States (C. C. A. 5th Cir.) 108 Fed. 61, 63, 47 C. C. A. 210, 212.

See, also, United States v. Orr (D. C.) 233 Fed. 717; McKelvey v. United States, 241 Fed. 801, 154 C. C. A. 503.

The demurrers to the indictment were properly overruled.

[3] 2. Nor do we think that there was any error in the action of the court in refusing to grant any of the motions for a severance and separate trial made in said case. No reason was given by any defendant which required such action as matter of law. The action of the court in refusing the same was entirely in his legal discretion, which was not abused, and this court cannot interfere with the exercise of such discretion. Ball v. United States, 163 U. S. 662, 672, 16 Sup. Ct. 1192, 41 L. Ed. 300.

[4] 3. Error is assigned to the ruling of the court in refusing to permit a witness for the government, who had testified that his feelings were inimical to the defendant Riddle, because of his prosecuting as an attorney his two sons on a charge of arson, to be asked if one of the sons did not plead guilty. The only purpose of the testimony was to show the hostility of the witness to the defendant, and the witness had testified without qualification to its existence. The question of the guilt or innocence of the witness' sons was wholly irrelevant. Allen v. Fincher, 187 Ala. 602, 65 South. 946.

4. There was no error in refusing to permit the inquiry as to whether the witness Keys, a post office inspector, had not recently inspected the books of one A. D. Bentley. While Bentley had been summoned by the government as a witness, he was not introduced, and clearly the effect which such inspection or any consequent discovery might have produced on Bentley's testimony, had it been offered, was entirely irrelevant, where the person was never offered as a witness in the case.

5. Likewise we think no error was committed by the court in refusing to require the clerk of the court to produce the original envelopes making the return to said court of a summons for a juror in this case. The request was made pending the cross-examination of the witness Keys. The witness had been asked if he had not instructed the return of the subpœnas for certain jurymen drawn for service in this case, and had said he was not the man.

No statement was made of what was expected to be shown by the envelopes, or if they would contain any admissible entry. The entire inquiry, if the return of the subpœnas was shown, may have been occasioned by proper reasons, not bearing on any animus of any witness in the case. It was an inquiry as to a purely collateral matter, concern-

ing which the defendant undertook to examine Keys, and, if at all relevant, the defendant could not contradict the witness. Safter v. United States, 87 Fed. 329, 330, 31 C. C. A. 1; Wharton, Crim. Ev. (10th Ed.) § 484.

6. In regard to the other errors assigned to the admission or rejection of evidence, we find no reversible error in the rulings of the court. Each piece of evidence admitted was competent for the purpose for which admitted, and where any statement of any defendant was testified to, the court in admitting the same limited each statement as evidence against the person making it, and repeated his caution so limiting this evidence in his charge to the jury. Likewise we think the rulings of the court excluding certain evidence were correct, and that the evidence offered in each case was inadmissible.

7. We also think that the charge fairly presented to the jury the questions at issue in the case, and that where the requests were not coupled with objectionable matter they were either given, or were fully covered by the charge of the court.

8. The main question in this case, and the one which was principally argued, was that the court should have given the affirmative charge in favor of each of these defendants. We have very carefully examined this record, with a view to ascertaining whether there was such a failure of proof in regard to any one of the defendants as renders the action of the court in refusing to give the affirmative charge error. The case was submitted on the evidence offered by the government, and the evidence of good character, offered by the defendant St. John, and the testimony of Boynton, president of the Isbell National Bank, offered for the defendant Wooten, together with a number of bills of lading showing cotton shipments. We think it is quite clear that, if any defendant was connected with the fraudulent use of the mails, or the conspiracy to so use them, as charged in this indictment, he was properly convicted.

It is insisted by the defendant Riddle that his connection with this case was that of an attorney at law, and that there is no evidence in the record to show that he did anything except what was legitimate to be done as such attorney. We think the evidence was sufficient to authorize the jury to find that his connection with the transactions was other than as an attorney at law. He first appears as one of the organizers of the Savage Cotton Company, Inc. He was also a director and an officer therein. He remained a stockholder of record during the transactions in question. While there is some variation in the statement as to the number of times and length of times he was at the office of the Savage Cotton Company, Inc., and in conference with its manager, there was evidence permitting the jury to find that he was there constantly, and there is nothing in the evidence to show that his conferences were upon legal matters, or that he was not fully advised as to what was going on. As is stated in the supplemental brief on behalf of the defendant Riddle:

"There is not a line of testimony in the record that the Savage Cotton Company, Inc., ever needed or required the services of an attorney from the time they were organized, 'until the final crash came.' There is not a hint in the testimony that they ever had any legal troubles of any kind."

We think, therefore, it was a question for the jury to say whether D. H. Riddle was participant with the Savages and others in the transactions described in the indictment, and the verdict cannot be set aside, as being without evidence to support it.

We think that the same conclusion results in regard to T. A. St. John and W. O. Wooten. There is evidence upon which the jury might find that the weight sheets prepared by St. John were untrue, and that he was aware of the use that was being made of them. His activities in going to North Carolina, seeking to adjust the troubles that arose, are also some testimony of a connection with the general scheme. We also think there was evidence of Wooten's participation in the financial affairs of this corporation and the manipulation of the cotton at the compress, and also in the endeavor to adjust the differences which arose out of these false invoices and weight sheets, which would prevent the verdict from being set aside as without sufficient evidence to support it.

[5] This court is not authorized on a writ of error to set aside a verdict of conviction on the ground that it is against a preponderance of the evidence. A request to direct a verdict for the defendant should be refused, if there is any substantial evidence on which to base a verdict. Cohen v. United States, 214 Fed. 23, 27, 130 C. C. A. 417.

"The alleged fact that the verdict was against the weight of evidence we are precluded from considering. if there was any evidence proper to go to the jury in support of the verdict. Crumpton v. U. S., 138 U. S. 361; Moore v. U. S. 150 U. S. 57, 61." Humes v. United States, 170 U. S. 210, 212, 18 Sup. Ct. 602, 603 (42 L. Ed. 1011).

In regard to S. E. Graham, we have reached the conclusion that there is no sufficient evidence in the record to connect him with the crimes charged in this indictment. He appears to have been a subordinate employee in the office of the Atlanta, Birmingham & Atlantic Railway Company. He does not appear to have been about the office of the Savage Cotton Company, Inc., or the compress. The only evidence in the record of his connection with the shipments of cotton being made by the Savage Cotton Company, Inc., was that Luther testified that he was in the possession of a number of bills of lading and the freight money therefor, which he claims to have been turned over to him by Hardy, one of the defendants, who was convicted and has not appealed. While, if any connection had been shown between Graham and any of the transactions described in the indictment, the above evidence might have been admissible upon the question of intent, we do not think it was competent to connect him with the offenses charged, and should have been excluded when no connection was otherwise shown.

The judgment of the District Court is therefore affirmed as to all of the plaintiffs in error except S. E. Graham, with costs of this writ of error. As to S. E. Graham, the judgment is reversed, with directions to grant a new trial.

Affirmed in part; reversed in part.