**CURTIS v. UNITED STATES.**

No. 818.

Circuit Court of Appeals, Tenth Circuit.

Nov. 29, 1933.

Philip Hornbein, of Denver, Colo., for appellant.

Ivor O. Wingren, Asst. U. S. Atty., of Denver, Colo. (Thomas J. Morrissey, U. S. Atty., of Denver, Colo., on the brief), for the United States.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

The first seven counts of the indictment herein charged that John J. Toole was a director and the cashier of the Craig National Bank of Craig, Colorado; that such bank was a member of the Federal Reserve System; that Toole made false entries in the books and reports of such bank, contrary to the provisions of 12 USCA § 592, and that Curtis aided, abetted, incited, counseled, and procured Toole to commit such offenses.

The eighth count charged that Toole and Curtis, from May 1, 1928, continuously up to February 15, 1932, conspired to commit offenses against the United States, to-wit, to violate 12 USCA § 592.

It further charged that an object and purpose of such conspiracy was that Toole, while a director and the cashier of such bank, with intent to injure and defraud such bank and to deceive the Comptroller of the Currency, his agents, and examiners, would unlawfully make false entries in the books and reports of such bank.

It further alleged, as overt acts in furtherance of such conspiracy, that Toole made the false entries charged in counts 1, 2, and 6; that on March 27, 1930, and on October 2, 1929, Toole made false entries in the account of Curtis as county treasurer of Moffat County in the individual ledger sheet of such bank showing the balances in such account on such dates to be $26,436.86 and $21,550, respectively; and that Curtis signed false statements to the chief national bank examiner on November 2, 1929, and on May 12, 1931, respectively, the first stating the balance in his account as county treasurer in such bank, at the close of business November 1, 1929, was $9,783.21, and the second stating the balance in such account at the close of business on May 11, 1931, was $1,483.

Curtis was tried separately, and the jury returned a verdict of not guilty on the first seven counts, and a verdict of guilty on the eighth count.

The facts established by the Government's evidence are these: The Craig Na-

tional Bank was a national banking association and a member of the Federal Reserve System. Curtis was employed by the bank from 1919 to 1924 as assistant cashier. During the time of the alleged conspiracy Toole was the cashier and a director of the bank. Curtis was county treasurer of Moffat County, Colorado, from 1928, to 1932. In May, 1928, Toole told Curtis that the bank was short in its exchange and that it needed some money before the bank examiner came, and asked Curtis if he might use the funds of the county treasurer to take care of such shortage by charging the account of Curtis as county treasurer therewith until after the bank examiner had made his examination. Curtis thought it over and then told Toole it would be all right. From that time on until the bank closed in February, 1932, Toole made many fictitious charges to the account of the county treasurer. They were usually made immediately prior to an examination of the bank by the bank examiner. Some of these entries were charged off after the examination, while others remained and appeared on the monthly statement of the bank to Curtis as treasurer. Curtis knew of a great many of these fictitious entries. In making up the monthly statements of Curtis's account as county treasurer, Toole generally eliminated the fictitious and irregular entries therefrom. Because such statements showed erasures and corrections, Curtis secured new statement blanks from the bank and recopied them, and placed the copies instead of the originals in his files in the county treasurer's office. At times the bank statement showed fictitious charges and credits to the account of the county treasurer. On such occasions Curtis secured blanks from the bank and prepared new statements eliminating such fictitious and irregular entries.

In June, 1928, Curtis was short in his account as county treasurer. He carried this shortage as a cash item in his cash drawer. He discussed this shortage with Toole, and Toole agreed to take care of it, and did so by arbitrarily crediting the account of the county treasurer in the bank with the amount thereof. A like transaction took place on February 13, 1932.

On seven different occasions during the period of the alleged conspiracy, Curtis signed statements to the national bank examiner showing the balances on designated dates of his deposit as county treasurer in the bank as reflected by the bank books, but which were not in fact the true balances in such deposit on such dates. Two of these were statements alleged as overt acts committed by Curtis. Before signing such statements, Curtis took them to the bank to see if they corresponded with the books of the bank after the fictitious entries had been made by Toole. With respect to these statements, Curtis testified:

"I could have written across the face of those statements, 'Mr. Toole has used a portion of my county balance,' had it been my desire to betray a friend. I didn't care to expose him."

During the period of the alleged conspiracy, the aggregate of the fictitious and irregular credits to the account of the county treasurer was $266,000, and the aggregate of the fictitious and irregular debits thereto was $260,000.

Toole was called as a witness for the Government. During the course of his examination, counsel for the Government asserted that they were surprised by his testimony and asked leave to cross-examine him. Leave was granted. He was then asked if he had not made false entries in the accounts of Curtis as county treasurer with the knowledge and consent of Curtis. Toole answered in the negative. He was then asked if he did not state to Mr. Gere, an investigator for the Department of Justice, on February 22, 1932, that he (Toole) had made false entries in the account of Curtis with the latter's knowledge and consent. Objection was interposed thereto, and overruled. In passing on the objection, the court said:

"We are seeking the truth here, anyway we can bring that out. If he makes two contradictory statements, let the jury hear them both, and then it is for them to say which is the correct one. It is not any more binding upon him than the statement he makes here."

Toole answered, "I presume I did." He later testified in effect that he made Curtis consent thereto.

I.

At the close of the evidence Curtis moved for a directed verdict of not guilty.

Section 1, c. 83, p. 280, Colo. S. L. 1927, provides that the county treasurer shall deposit all public funds coming into his possession "in one or more responsible banks located in the State of Colorado." It therefore became the duty of the county treasurer to deposit the county funds in a Colorado bank. These funds were trust funds that belonged to the county; not to Curtis. McClure v. Board of Commissioners, 19 Colo.

122, 34 P. 763. As an official of the county he had no authority to loan such funds to a private person for private purposes. The statute enjoined him to keep them in a bank.

In May, 1928, Curtis consented that Toole should make an entry in the books of the bank charging the account of the treasurer with an amount sufficient to cover up and conceal from the bank examiner a shortage in the exchange of the bank. Since Curtis was not authorized to loan money of the county to the bank, the making of this entry did not reduce the amount of the liability of the bank to the county. This entry and all subsequent like entries were therefore necessarily false. Laws v. United States (C. C. A. 10) 66 F.(2d) 870.

Toole and Curtis expressly agreed to the making of the first false entry by Toole. There is no proof of an express agreement as to subsequent entries made to aid Toole in concealing shortages from the bank examiners, but the fact that Curtis actively concealed the entries and made false statements and reports to the bank examiner, warranted the jury in drawing the inference that he continued to agree to the making of the false entries by Toole. He expressly agreed to the making of the false entries to cover up his own shortages.

We are of the opinion that the evidence was amply sufficient to support the conviction on the conspiracy count.

## II.

Toole proved to be an adverse witness. It was then within the discretion of the court to permit his cross-examination by counsel for the Government. St. Clair v. United States, 154 U. S. 134, 150, 14 S. Ct. 1002, 38 L. Ed. 936.

It was not error to elicit, on such cross-examination, that Toole had made prior conflicting statements. This point was fully considered by the Second Circuit in DiCarlo v. United States, 6 F.(2d) 364, 367, where the court said:

"The point just considered leads to the next, which concerns the examination of the witness Gilmore herself. She told the same story as Pattitucci up to the point of the attack, when as we have said she declared that she could not identify the defendants. The prosecution, plainly surprised by this volte face, then began to cross-examine her straitly, and brought out from her contradictory statements, made not only before the grand jury, but on other occasions. Her actual evidence before the grand jury was not introduced. The latitude to be allowed in the examination of a witness, who has been called and proves recalcitrant, is wholly within the discretion of the trial judge. Nothing is more unfair than to confine a party under such circumstances to neutral questions. Not only may the questions extend to cross-examination, but, if necessary to bring out the truth, it is entirely proper to inquire of such a witness whether he has not made contradictory statements at other times. He is present before the jury, and they may gather the truth from his whole conduct and bearing, even if it be in respect of contradictory answers he may have made at other times.

"In St. Clair v. U. S., 154 U. S. 134, 14 S. Ct. 1002, 38 L. Ed. 936, this procedure was approved, as also in Swift v. Short, 92 F. 567, 34 C. C. A. 545 (C. C. A. 8); Hays v. Tacoma R. & P. Co. (C. C.) 106 F. 48; Tacoma R. & P. Co. v. Hays, 110 F. 497, 49 C. C. A. 115 (C. C. A. 9). See, also, Hickory v. U. S., 151 U. S. 303, 309, 14 S. Ct. 334, 38 L. Ed. 170. The question decided in Putnam v. U. S., 162 U. S. 687, 16 S. Ct. 923, 40 L. Ed. 1118, did not arise here. Nor was the right abused as in Rosenthal v. U. S., 248 F. 684, 160 C. C. A. 584 (C. C. A. 8). The possibility that the jury may accept as the truth the earlier statements in preference to those made upon the stand is indeed real, but we find no difficulty in it. If, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person and in court. There is no mythical necessity that the case must be decided only in accordance with the truth of words uttered under oath in court."

The statement of the court, quoted above, made at the time this evidence was being elicited, was not prejudicial and was a correct statement of the law. The observation that "we are seeking the truth here," was a mere statement of what is the primary purpose in every trial of an issue of fact to a jury.

## III.

Did the conspiracy count charge an indictable offense?

A person incapable of committing the objective offense may conspire to commit such offense with one who is capable of committing it. United States v. Rabinowich, 238 U. S. 78, 86, 35 S. Ct. 682, 59 L. Ed. 1211; Ex parte O'Leary (C. C. A. 7) 56 F.(2d) 515; Carter v. United States (C. C. A. 8) 19

F.(2d) 431; Israel v. United States (C. C. A. 6) 3 F.(2d) 743. Therefore, while Curtis could not have committed the objective offenses as a principal, because he was not an officer, director, agent, or employee of the bank (12 USCA § 592; Coffin v. United States, 162 U. S. 664, 669, 16 S. Ct. 943, 40 L. Ed. 1109), he could conspire with Toole, to commit such offenses.

It may be stated as a general rule that conspiracy to commit a crime is a different offense from the crime which is the object of the conspiracy. United States v. Rabinowich, supra, page 85 of 238 U. S., 35 S. Ct. 682, 684; Ford v. United States, 273 U. S. 593, 619, 47 S. Ct. 531, 71 L. Ed. 793; Morris v. United States (C. C. A. 8) 7 F.(2d) 785; Chew v. United States (C. C. A. 8) 9 F.(2d) 348; Linden v. United States (C. C. A. 3) 2 F.(2d) 817; Riddle v. United States (C. C. A. 5) 279 F. 216; Enrique Rivera v. United States (C. C. A. 1) 57 F.(2d) 816; Gerson v. United States (C. C. A. 8) 25 F. (2d) 49; Graham v. United States (C. C. A. 8) 15 F.(2d) 740.

However, conspiracy to commit certain crimes will not lie against the participants in the consummated objective offense. They are crimes that cannot be committed except by the concerted action of at least two persons, and of such a nature that the immediate effect of their consummation reaches only the participants therein, so that the conspiracy to commit them is in such close connection with the objective offense as to be inseparable from it. Examples of this class of crimes are, adultery, bigamy, incest, and dueling. Lisansky v. United States (C. C. A. 4) 31 F.(2d) 846, 849, 67 A. L. R. 67; United States v. Katz, 271 U. S. 354, 355, 46 S. Ct. 513, 70 L. Ed. 986.

Clearly the substantive offenses, which were the objects of the conspiracy here charged, do not fall within the class of crimes last adverted to.

It has been held that it is an indictable offense under section 37 of the Penal Code (18 USCA § 88) for an officer of a bank and a person not connected with the bank to conspire to violate 12 USCA § 592. United States v. Martin, Fed Cas. No. 15,728; Scott v. United States (C. C. A. 6) 130 F. 429; United States v. Stevens (D. C. Minn.) 44 F. 132, 140-141. We conclude that the eighth count charged an indictable offense.

## IV.

Was the acquittal on the first seven counts a bar to a conviction on the eighth count?

It will be noted that the first three overt acts alleged were the making of the false entries charged in counts 1, 2, and 6, and that the remaining overt acts were entirely distinct from the substantive offenses charged.

A plea of autrefois acquit is unavailing unless the offense to which it is interposed is precisely the same in law and in fact as the former one relied upon under the plea. Burton v. United States, 202 U. S 344, 380, 26 S. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362; Kelly v. United States (C. C. A. 6) 258 F. 392; Moorehead v. United States (C. C. A. 5) 270 F. 210.

The test of the identity of offenses is whether the same evidence is required to sustain them (Moorehead v. United States, supra); or whether, if what is set out in the charge to which the plea is interposed, had been proven in support of the charge, acquittal of which is asserted as a bar, it would have sustained a conviction on the latter charge. Morgan v. Devine, 237 U. S. 632, 35 S. Ct. 712, 59 L. Ed. 1153; Brady v. United States (C. C. A. 8) 24 F.(2d) 399, 404; Carter v. McClaughry, 183 U. S. 365, 22 S. Ct. 181, 46 L. Ed. 236; Burton v. United States, 202 U. S. 344, 377, 26 S. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362; Gavieres v. United States, 220 U. S. 338, 31 S. Ct. 421, 55 L. Ed. 489.

The elements of conspiracy, as defined in section 37 of the Criminal Code (18 USCA § 88), are (a) an unlawful agreement to commit any offense against the United States or to defraud the United States, and (b) an act done by one or more of the conspirators to effect the object of the conspiracy.

"There must be an overt act; but this need not be of itself a criminal act; still less need it constitute the very crime that is the object of the conspiracy." United States v. Rabinowich, supra; Cook v. United States (C. C. A. 8) 28 F.(2d) 730, 732.

It is not essential that all the conspirators join in the overt act. It is sufficient if it was done by one of them alone. Minner v. United States (C. C. A. 10) 57 F. (2d) 506, 510; United States v. Rabinowich, supra, page 86 of 238 U. S., 35 S. Ct. 682; Joplin Merc. Co. v. United States, 236 U. S. 531, 536, 35 S. Ct. 291, 59 L. Ed. 705; Bannon v. United States, 156 U. S. 464, 468, 15 S. Ct. 467, 39 L. Ed. 494.

While an overt act done by one conspirator, during the existence and in furtherance of the conspiracy, becomes the act of the oth-

er conspirators, this is by virtue of the agency which grows out of the unlawful agreement and not because the other conspirators participate in the act. Van Riper v. United States (C. C. A. 2) 13 F.(2d) 961, 967; Morrow v. United States (C. C. A. 8) 11 F. (2d) 256, 259; Hitchman C. & C. Co. v. Mitchell, 245 U. S. 229, 249, 38 S. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461.

The conspiracy count alleged that certain of the overt acts were done by Toole and that certain of them were done by Curtis. It did not allege that any of the overt acts were done jointly or that either aided, abetted, incited, counseled, or procured the doing of the overt acts alleged to have been done by the other.

In order to have convicted Curtis under the first seven counts of the indictment, it would have been necessary for the Government to prove that Toole committed the substantive offenses therein charged, with the intent defined in the statute, and that Curtis with like intent aided, abetted, incited, counseled, or procured Toole to commit the same. Coffin v. United States, supra.

On the other hand, in order to warrant the conviction of Curtis under the conspiracy charged in count 8, it was sufficient to show the unlawful agreement between Toole and Curtis to violate 12 USCA § 592, and that Toole alone did one or more of the overt acts charged to have been done by him in order to effect the object of the conspiracy, or that Curtis alone did one or more of the overt acts charged to have been done by him to effect the object of the conspiracy. It was not necessary to prove that Toole and Curtis joined in the doing thereof, or that either aided, abetted, incited, counseled, or procured the other to do it.

It follows that the same evidence was not required to sustain the conspiracy charge as was required to sustain the substantive offenses charged in the first seven counts.

Proof of the unlawful agreement between Toole and Curtis to commit the offenses alleged, coupled with proof that Toole made the false entries alleged in counts 1, 2, and 6, would not have warranted a conviction on those counts. It would have been necessary to prove, in addition thereto, that Curtis aided, abetted, incited, counseled, or procured Toole to make such false entries. It follows that proof of the facts alleged in the conspiracy count would not have warranted a conviction of any of the offenses charged in the first seven counts.

We conclude that the offenses charged in the first seven counts and the offense charged in the eighth count were separate and distinct, and that the acquittal on the first seven counts was not a bar to a conviction on the eighth count. The question is not a new one; it has been ruled in accordance with our conclusion in a number of adjudicated cases. See Moorehead v. United States, supra; Louie v. United States (C. C. A. 9) 218 F. 36; Enrique Rivera v. United States (C. C. A. 1) 57 F.(2d) 816; Steigleder v. United States (C. C. A. 8) 25 F.(2d) 959, 960-961.

Furthermore, the defense of autrefois acquit may be waived. Brady v. United States (C. C. A. 8) 24 F.(2d) 399. Curtis at no time either by objection to the verdict on count 8 or to the entry of judgment thereon, presented such a defense to the trial court. He thereby waived it. Brady v. United States, supra.

The judgment is affirmed.